[No. 8252.—In Bank.]
March 10, 1882.

# SAN FRANCISCO PIONEER WOOLEN FACTORY *v.* HENRY BRICKWEDEL, Auditor, etc., and SPRING VALLEY WATER WORKS.

Water Rates—Order Number 1573 Establishing Water Rates in the City of San Francisco—Constitutional Law.—By an ordinance of the Board of Supervisors of San Francisco known as "Order No. 1573,"—establishing water rates—it is provided that "The rates of compensation to be collected for water supplied to the city and county of San Francisco for municipal purposes shall be as follows : Fifteen ($15) dollars per month for each and every hydrant for fire purposes and for flushing sewers. Five hundred ($500) dollars per month for water furnished to Golden Gate Park. Seven thousand ($7,000) dollars per month for water furnished for all the public buildings * * * due and payable at the end of the month ;" and rates are also prescribed to be collected for water furnished for domestic and other purposes to private consumers. But, it is also provided that "in case the rates or compensation hereby fixed for water supplied to the city and county of San Francisco for municipal purposes shall be fully paid monthly by the said city and county to the Spring Valley Water Works, the same shall be allowed by said corporation upon the rates charged to its consumers other than the city and county, for the month succeeding the month in which the same are collected, and in such manner that the rates to such consumers for such succeeding month shall be diminished twenty-five (25) per cent., or such proportion thereof as may be collected from said city and county.

*Held :* The order does not fix the rates of compensation for the use of water, but leaves them indefinite and uncertain; and is therefore not a valid execution of the power confered upon the Board of Supervisors by Section 1, Article xiv, of the Constitution.

Id.—Id.—Id.—(Myrick, J., concurring.)—The Board of Supervisors of the city and county of San Francisco has had, since the new Constitution went into effect, and has, the power to fix and determine the rates or compensation to be collected by the Spring Valley Water Works as well from the city and county (for water used for fire purposes, for flushing sewers, for public buildings and offices, for sprinkling streets and for beautifying parks), as from private persons; any provision in any statute to the contrary notwithstanding.

Id.—Id.—Id.—Case Explained—(Ross, J., concurring.)—The construction placed on the provisions of the new Constitution in relation to water in the case of the *Spring Valley Water Works v. The Board of Supervisors of San Francisco*, 58 Cal.,—necessarily results in relieving that Company of the obligation to furnish water to the city and county of San Francisco free of charge for any purpose.

Application for writ of mandamus.

*Wallace, Greathouse & Blanding,* for Plaintiff.

It is claimed that the Spring Valley Water Works are under obligation to furnish water free to the city in case of fire, or other great necessity, under an Act entitled "An Act for the incorporation of water companies, approved April 22, 1858"; and that the Supreme Court has determined that the words "other great necessity," apply to every municipal requirement except for the water used in the public buildings. (Statutes of 1858, p. 218, § 4; *Spring Valley Water Works* v. *San Francisco,* 52 Cal. 111.)

The answer to this is, that the provisions of the new Constitution above referred to, entirely sweep away Article iv of the Act of 1858, and establish a comprehensive plan controlling both individuals and corporations supplying water to municipalities and fixing their privileges, duties, and burdens. (Const. of 1879, Article xiv, § 1; also, Article xi, § 19.)

*J. F. Cowdery,* City and County Attorney, and for Respondent, Henry Brickwedel.

The company has no right under its charter to charge for water which it is bound to furnish free. The city has no authority to make an engagement with the Spring Valley Water Works to pay for water which it was bound under its charter to furnish free. (*San Diego Water Co.* v. *San Diego,* reported *infra.*)

In providing for the fixing of rates or compensation to be collected by any person, company, or corporation for the use of water supplied to any city and county, etc., section 1, Article xiv, of the Constitution does not abolish free water. It means that when water is furnished to any city and county which is not furnished in case of fire or other great necessity, such water shall be paid for at fixed and uniform rates.

An examination of Section 19 of Article xi, taken with the well known history of the water question of this State leads to the inevitable conclusion that the provisions of that section were never intended to apply to either water or gas companies in existence at the time of or before the adoption of the Constitution. That article speaks *in futuro.* Hereafter water and gas companies may take up streets and lay

down pipes in cities. Those now in existence are to stand upon existing laws.

*Flournoy & Mhoon* (by permission of the Court), for "Contra Costa Water Co."

*F. G. Newlands*, for Spring Valley Water Works.

Sharpstein, J.:

The petitioner alleges that on the first day of June, 1880, the Board of Supervisors of the City and County of San Francisco, passed an ordinance known as "Order No. 1,573— Establishing Water Rates," to take effect on the first day of July thereafter, and that by section 11 of said ordinance it is provided that " The rates of compensation to be collected for water supplied to the City and County of San Francisco for municipal purposes, shall be as follows:

"Fifteen ($15) dollars per month for each and every hydrant for fire purposes and for flushing sewers. Five hundred ($500) dollars per month for water furnished for Golden Gate Park. Seven thousand ($7,000) dollars per month for water for all the public buildings"  *   *   *   "due and payable at the end of each month."

And it is further alleged that in and by said ordinance rates were also prescribed to be collected for water furnished for domestic and other purposes to private consumers.

But it was provided in said ordinance that "in case the rates or compensation hereby fixed for water supplied to the City and County of San Francisco for municipal purposes shall be fully paid monthly by the said city and county to the Spring Valley Water Works, the same shall be allowed by said corporation upon the rates charged to its consumers other than the city and county, for the month succeeding the the month in which the same are collected, and in such manner that the rates to such consumers for such succeeding month shall be diminished twenty-five (25) per cent. or such proportion thereof as may be collected from said city and county."

Since the passage of that ordinance such proceedings have been had by said Board as to entitle the Spring Valley Water

Works to have its claims for compensation for water furnished to said city and county, audited and allowed by the respondent as auditor of said city and county, provided said ordinance was valid. But it is alleged that the respondent has refused to audit and allow said claims, and that by reason thereof said Spring Valley Water Works has not allowed anything upon the rates 'charged to its private consumers, of which the petitioner is one, and it therefore asks the Court to compel the allowance of said claims against the city and county, in order that the Spring Valley Water Works may be compelled to proportionately diminish the rates charged to the petitioner as a private consumer of its water.

It is claimed on behalf of the petitioner that by Section 1 of Article xiv of the Constitution, it is made the duty of said Board of Supervisors to fix the rates or compensation to be collected by said Spring Valley Water Works for the water supplied to said city and county, or the inhabitants thereof, and that by the passage of the ordinance above referred to, said Board strictly fulfilled the requirement of said clause of the Constitution. But we have looked in vain for any provision of the Constitution which would authorize said Board to fix the rates to be paid by the city and county, and then, in effect, provide that if said city and county did not pay the rates so fixed for it to pay, that the same should be added to the rates fixed for private consumers to pay. Or, that in case the city and county did pay its rates or any part thereof, that the amount paid by it should be allowed to private consumers. We do not think that the language of the Constitution will admit of that construction. If it confers upon the Board the power to fix the rates or compensation which the city and county must pay to the Spring Valley Water Works, for water supplied to said city and county, it is very clear that when said rates are fixed, it concerns nobody except the Spring Valley Water Works and said city and county, whether said rates are paid by the latter or not. The ordinance under consideration simply provides that, if the Spring Valley Water Works collects any money from the city and county for water, it shall credit the amount so collected to private consumers of water. Is that fixing rates? If not, that pro-

vision of the ordinance is void, and the petitioner can claim nothing by virtue of it.

The question mainly discussed on the hearing of this case was whether, under the Constitution, the city and county is chargeable for water which, under the general incorporation law of the State, it was entitled to have furnished without charge before the adoption of the Constitution.

But that question does not arise in this case. The petitioner's right to be heard depends wholly upon the validity of the ordinance now before us. If invalid, as we think it to be, the Auditor can not be compelled to audit and allow claims for water furnished to the city under it. And that is the only question now before the Court.

Application denied.

MORRISON, C. J., and THORNTON, McKINSTRY, and McKEE, JJ., concurred in the judgment.

MYRICK J., concurring:

1. In Article xiv, Section 1, of the Constitution of 1879, it is declared that "the use of all water now appropriated, or that may hereafter be appropriated, for sale, rental, or distribution, is hereby declared to be a public use, and subject to the regulation and control of the State;" and "that the rates or compensation to be collected by any person, company, or corporation in this State, for the use of water supplied to any city and county, or city or town, or the inhabitants thereof, shall be fixed, annually, by the Board of Supervisors," etc. Section 2. "The right to collect rates or compensation for the use of water supplied to any county, city and county, or town, or the inhabitants thereof, is a franchise, and can not be exercised except by authority of and in the manner prescribed by law."

Before the adoption of the Constitution of 1879, there was a growing assertion on the part of interested parties, that when a franchise had been granted by the Government, it so far partook of the nature of a contract that neither its existence nor its mode of being exercised could thereafter be interfered with or controlled; that the creature became and was inde-

pendent of its creator. This idea had, in some States, received the sanction of the courts.

The insertion of the above quoted provisions, and some others, in the Constitution, is a protest on the part of the people of this State against the growing assumption. The people declared, in language unmistakable, that the use of water for sale, rental, or distribution is a public use, subject to the regulation and control of the State, and that the right to collect compensation is a franchise, and can not be exercised except by authority of and in the manner prescribed by law.

This language is plain and direct, and means just what it says. It is to apply to all water for sale, rental or distribution by means of a franchise. It will control all franchises heretofore or hereafter to be granted or exercised. If any provision in any existing franchise is contrary to or assumes to give privileges or impose burdens inconsistent with this language, such provision must give way. In my opinion, then, it follows that the Board of Supervisors of the city and county of San Francisco has had, since the new Constitution went into effect, and has the power to fix and determine the rates or compensation to be collected by the Spring Valley Water Works, as well from the city and county as from private persons, any provision in any statute to the contrary notwithstanding; that the Board of Supervisors has the power to determine what amounts respectively would be proper for individuals to pay for water furnished to and used by them, and what amounts respectively should be paid by taxation for water used for fire purposes, for flushing sewers, for public buildings and offices, for sprinkling streets and for beautifying parks. The Board may fix the rates for each and all these purposes by a system of measurement, if practicable, or it may adopt any other mode which, in its judgment, will attain the required result. It may determine what sum would be a proper proportion for property to pay, through taxation, for the benefit it receives, and what sums individuals should pay for benefits they receive; and I find nothing in the Constitution which prevents the Board from relying upon the judgment of its own members in fixing such proportions.

As if to declare more certainly, if possible, that the people were in earnest in their intention to have control over franchises of this character, it is also declared in section 1, above referred to, that if any person, company or corporation shall collect water rates in any city and county, or city or town, otherwise than as established, the franchise and water works shall be forfeited for the public use.

This question of water supply and regulation in this State is much broader than local differences as between rate-payers and taxable property in San Francisco; it is co-extensive with the State, and may be co-extensive with its prospects and needs. It may be, that in dealing with the subject at large, and in laying down general rules to be applied to the water supply throughout the State, local changes will result, not to the satisfaction of all; but that is no argument against the application of the general rules, nor any reason why the will of the people, as expressed in the Constitution, should not be enforced and acted upon. In cities and counties, and cities or towns, the local governing bodies are to fix rates; in other subdivisions of the State the supply of water is subject to the regulation and control of the Legislature.

2. In the ordinance before us (Order No. 1573, approved June 10, 1880), the Board of Supervisors of the City and County of San Francisco did not fix rates or compensation for water to be furnished during the year commencing July 1, 1880, to the city and county, nor to the inhabitants thereof, as it was authorized and required by the Constitution to do. After naming sums as rates to be paid for water furnished to houses, tenements, offices, etc., and for other individual purposes, the order proceeds in section 11 to name sums as rates or compensation to be collected for water supplied to the city and county for municipal purposes, viz: fifteen dollars per month for each hydrant, five hundred dollars per month for the Golden Gate Park, and seven thousand dollars per month for all the public buildings; but at the close of that section is a clause which destroys the effect of the whole order. That clause is as follows:

"In case the rates of compensation hereby fixed for water, supplied to the city and county of San Francisco for municipal purposes, shall be fully paid monthly, by the said city

and county to the said Spring Valley Water Works, the same shall be allowed by said corporation, upon the rates charged to its consumers, other than the city and county, for the month succeeding the month in which the same are collected, and in such manner that the rates to such consumers for such succeeding month shall be diminished twenty-five per cent., or such proportion thereof as may be collected from said city and county."

This is not *fixing rates*—it is naming rates with a contingency. *If* the city pays, the rates to individuals are to be diminished; or, at least, there is to be a rebate. The amount, too, of the rebate is uncertain. If the city pays *so much*, there is to be a rebate of twenty-five per cent.; if it pays less, there is to be a proportional rebate. Who is to determine the proportion? Who is to determine how much will have been paid by the city, and thus ascertain the amount of the rebate? As we said above, this is not *fixing rates*. To fix is to establish, to settle, to determine, to limit, to define. To name a sum to be paid, with some uncertain amount to be repaid upon a contingency, is not a fixing of rates. In the first place, the order goes on to name rates to be paid by individuals and thereby names the amounts they ought properly to pay, respectively, for water used by *them;* and then says, if some one else, viz: the city and county, shall pay the sums which ought to be paid by it, and that promptly, month by month, then, in that case, the sums named to be paid by individuals are too large, and there shall be a rebate.

That kind of legislation is too uncertain to be called legislation. As well might the Board have said, if Mr. A. shall pay his water bills at, say five dollars per month, Mr. B.'s bills shall be five dollars; but, if Mr. A. shall not pay his bills in full, Mr. B. shall pay a proportional increase.

The Constitution is very plain and direct in its provisions. The Board of Supervisors is to fix the rates or compensation for the use of water to be supplied to the city and county; the Board is, also, to fix the rates or compensation for the use of water supplied to the inhabitants of the city and county; the Board is to fix—not leave indefinite and uncertain. Until there shall have been a fixing of rates, according to the Constitution, I do not see how the city and county can be

compelled to pay; neither do I see how the city and county can be compelled to do an act in furtherance of the uncertainty created by the ordinance.

Ross, J., concurring:

The purpose of this proceeding, as explained by all parties, is to obtain a determination by this Court of two questions—first, whether or not the Spring Valley Water Works is now under the legal obligation to furnish water to the city and county of San Francisco free of charge for any purpose, and second, whether or not the so-called Bayly ordinance is valid. Both questions have been elaborately argued, a decision on both requested by all parties, and as the questions are of public, as well as of private interest, I think they ought now to be determined.

As respects the first, I am of the opinion that the construction placed by a majority of the Court on the provisions of the new Constitution in relation to water, in the case of the *Spring Valley Water Works* v. *The Board of Supervisors of the City and County of San Francisco,* 7 Pac. C. L. J., 614, necessarily results in relieving that company of the obligation to furnish water to the city and county of San Francisco free of charge for any purpose. I dissented from that construction, and, in an opinion filed at the time, stated why I thought that result would follow the construction then adopted by the majority. Subsequent reflection and investigation has but confirmed and strengthened the views I then expressed. I thought then, and think now, that by incorporating and availing itself of the privileges conferred by the Act of 1858, the Spring Valley Water Company entered into a *contract* with the State by which it agreed, among other things, to furnish water to the extent of its means, to the city and county of San Francisco free of charge, in case of fire or other great necessity—which latter terms, it has already been determined by this Court, included all water necessary for sprinkling streets, watering public squares and parks, for flushing sewers and for all like purposes beneficial to the public; and, as a part consideration for this agreement on the part of the company to furnish water free of charge for those purposes, the State agreed that the company should

be entitled to furnish pure, fresh water to such of the inhabitants of the city and county as should wish to take it, for family uses, at reasonable rates and without distinction of persons, upon proper demand therefor—such rates to be determined by a majority of a Board of Commissioners, to be selected: Two by the city and county and two by the water company ; and in case of the inability of the four to agree to the valuation, then the four to choose a fifth person, who should also become a member of the Board; and in the event of the inability of the four commissioners to agree upon a fifth, then the sheriff of the county to appoint such fifth person. (Act of April 22, 1858, Stats. 1858, p. 219.) Whether the rates which would be fixed by a board so constituted, would be higher or lower than those fixed by the Board of Supervisors, is a question with which the Court has nothing to do.

That the manner of fixing the rates was as much a part of the agreement between the Company and the State as was the agreement to furnish the public water for certain purposes free of charge, is, to my mind, beyond any and all question. Both the right and the obligation arose out of contract and out of contract alone, and the one formed an important part of the consideration for the other. This contract, relating as it did to property rights—to the disposition of the water the Company owned—was, in my opinion, beyond the reach of subsequent legislation, statutory or constitutional. But a majority of my associates were of the opinion that the provisions of the new Constitution applied to this Company, and annulled its right to have the water rates fixed in the manner provided by the Act of 1858; and the Court so determined. It having been thus decided that the provisions of the new Constitution apply to the Spring Valley Water Company, it seems clear enough that the obligation on the part of the latter to furnish water free for any purpose, no longer exists. It certainly can not be said that the provisions of the Constitution apply to this Company for one purpose and not for another—that so far as a burden is imposed, they apply, but so far as a right or privilege is granted, they do not apply. To so hold, would not only be to adopt a rule of construction altogether new and manifestly unjust, but it

would also be in direct contravention of that provision of the Constitution itself which declares that its provisions are mandatory and prohibitory, unless by express words they are declared to be otherwise.

Applying, then, the provisions of the Constitution to the Spring Valley Company, we find that Company clothed by the nineteenth section of the eleventh article, with the privilege of introducing into and supplying "the city and county of San Francisco and its inhabitants * * * with fresh water for domestic and all other purposes, upon the condition that the municipal government shall have the right to regulate the charges thereof."

Elsewhere in the same section the Company is charged with the payment of damages to persons injured by laying of pipes, etc., but with this exception, the *sole condition* here imposed on the Company, in granting to it the privilege of introducing and supplying the *city and county of San Francisco* and its inhabitants with fresh water for domestic and *all other purposes,* is that the *municipal government shall have the right to regulate the charges thereof.* And this provision is followed up by Section 1 of Article xiv of the Constitution, in which it is declared that the rates of compensation to be collected for water *so supplied shall be fixed,* annually, by the Board of Supervisors, by ordinance, which shall continue in force for one year and no longer. Such ordinances are required to be adopted in the month of February of each year, and to take effect on the first day of July thereafter; and it is further provided that if the Board fail to pass such ordinances within such time, it shall be subject to peremptory process to compel it . to do so, at the suit of any party interested, and shall, also, be liable to such further process and penalties as the Legislature may prescribe.

These provisions of the Constitution applied to the Spring Valley Water Company, as they must be under the decision to which allusion has been made, leave no doubt in my mind that the Company has thereby become entitled to receive compensation for all water furnished the city and county, to be fixed in the mode pointed out in the Constitution itself.

The question remains: Does the Baily Ordinance fix the

rates or compensation to be collected for the use of the water supplied to the city and county and the inhabitants thereof? With the reasonableness of the rates or compensation the Courts have nothing to do. That is a matter for the Board of Supervisors, although, of course, the Constitution contemplates that the rates or compensation to be established shall be fair and just—just to the company furnishing the water, and just to those who use and have the benefit of it. But when the Board undertakes to fix the rates or compensation it *must do so*. To make the rates or compensation depend on a contingency or on contingencies, as does the ordinance in question, is not to *fix* them. Fixed means settled; established; firm. To say that certain rate-payers shall pay certain sums, *provided* the city and county shall pay a certain other sum or sums, in which event the amounts to be paid by the rate-payers shall be proportionately reduced, is not to *fix* anything, and does not answer the requirement of the Constitution, which, as I understand it, is that the Board of Supervisors shall by ordinance declare absolutely, independent of conditions and irrespective of contingencies, the rates or compensation to be collected by the Water Company for the use of water supplied to the city and county and to the inhabitants thereof. When so fixed, the Company is as much entitled to collect the amount from the city and county as from the inhabitants.

I concur in the judgment denying the writ.