DALLAS, Circuit Judge.
The plaintiff in error brought an action at law against the defendant in error, to recover a sum of money which the plaintiff averred was owing to him by the defendant, under two contracts in writing between them, dated,'respectively, March 2, 1899, and July 10, 1899. By the first of these contracts, the plaintiff agreed to construct two subways; and, by the second, to construct three shelters and one public lavatory building, in Branch Brook Park, Newark, N. J. For work and materials which he alleged he had furnished in pursuance and performance of these agreements, the plaintiff claimed that there was due him on subways account a balance of $4,345, with interest; and, on shelters and lavatory building account, a balance of $758.66, with interest—together amounting to the principal sum of $5,103.66. In and by the contract of March 2, 1899, the plaintiff agreed that he would fully complete the work to which it related on or before the expiration of three calendar months from the *845 ■date thereof, not including, however, such time as the prosecution of the whole work might be suspended by direction of the defendant; and, following the statement of this agreement, the contract contained a clause in these words:
“Liquidated Damages. And the said contractor hereby further agrees that the said party of the first part shall be and is hereby authorized to deduct and retain out of the moneys which may be due or become due to the said ■contractor under this agreement, as liquidated damages and not as a penalty, for the noncompletion of the work aforesaid within the time heretofore stipulated for its completion, the sum of twenty-five dollars ($25) for each and every day after the expiration of said stipulated time—Sundays and holidays and such days as the prosecution of the whole work may be suspended by the direction of said architect excepted.”
It was admitted that the work was not completed until 159 days, exclusive of Sundays and holidays, after the expiration of three calendar months from the date of the contract, and the learned trial judge, being of opinion that the sum of $25 per day, which the defendant was authorized to retain for noncompletion of the work at the time stipulated, should be regarded as liquidated damages, and not as a penalty, instructed the jury that, as the plaintiff’s claim was for $4,-345, and as $25 per day for 159 days would amount to $3,975, the plaintiff was entitled to recover under the first contract only the difference between $4,345 and $3,975, to wit, $370, with interest.
This decision of th.e court below was required by that of the Supreme Court in Sun Printing & Publishing Ass’n v. Moore, 183 U. S. 642, 22 Sup. Ct. 240, 46 L. Ed. 366, in which it was argued by counsel that, even where a stipulated sum is stated to be liquidated damages, yet, if the amount is disproportioned to the loss, it should be regarded as a penalty; but the court said:
“The asserted doctrine is wrong in principle, was unknown to the common law, does not prevail in the courts of England at the present time, and it is ■not sanctioned by the decisions of this court.”
This statement will be found at page 60 of the report, and the consideration of the subject which thereafter follows leaves no room for doubt that the intention was to decide “that, whether a particular stipulation to pay a sum of money is to be treated as a penalty, or as an ■agreed ascertainment of damages, is to be determined by the contract, fairly construed; it being the duty of the court always, where the damages are uncertain and have been liquidated by an agreement, to enforce the contract.” We are therefore of opinion that, inasmuch as the legal effect of the contract now in question was perfectly plain upon its face, the court was right in excluding the testimony which was “offered for the purpose of showing that there was no real damage, but, if any, only nominal damage,” and in finally enforcing the plaintiff’s stipulation in accordance with its terms. Brooks v. City of Wichita, 114 Fed. 297, 52 C. C. A. 209; Wood v. Niagara Falls Paper Co., 121 Fed. 818, 58 C. C. A. 256.
The contract of July 10, 1899, included an agreement by the plaintiff to complete the items of work to which it related, at or before the expiration of the time which, as to each of them, was therein stated; and the court properly instructed the jury that it was for it to deter *846 mine to what extent the completion of any of the work had been delayed beyond the time limited by that agreement, and to apply to its finding upon that subject the stipulation respecting liquidated damages which the contract contained. That stipulation was not in all respects identical with the similar one in the contract of March 2, 1899; but, as the case is presented to this court, no question is involved which calls for the consideration of any difference between them. The only point to be decided with respect to the later contract is precisely the same as that which has been already decided with respect to the earlier one, and therefore, no further discussion of it is necessary.
All the specifications of error have now been disposed of, except those thaf go to the refusal of the learned judge to charge in accqrdance with three requests of the plaintiff for instructions, as follows :
“(1) That the jury may consider whether or not the work under the contract for subways Nos. 1 and 2 was suspended with the consent and approval of the architects pending the arrival of the granite from the Shea Pink Granite Company. That, if the jury find that the work was suspended with the consent and approval of the architect during the delay occasioned by the failure of the Shea Pink Granite Company to deliver the granite for the subways, the verdict should be for the plaintiff for the full amount of the balance claimed under that contract.
“(2) That it is for the jury to consider and decide whether the various delays that existed under both contracts were or were not with the consent and approval of the architects, and, if so, they may find that they were due to a direction by the architect and the park commission that the work should be suspended during such periods of delay.
“(3) That they (the jury) might consider the payment of §1,775 on the orders dated May 23, 1901, by the park commission, as evidence of a waiver by the commission for any delay on the part of the plaintiff, if it existed.”
1. The first of these requests assumes' that the architect’s consent to-a suspension of work, under the first contract, would alone suffice to justify such suspension, and it must be conceded that this assumption is not wholly groundless, for that contract did, in its clause respecting liquidated damages, except from the days of delay for which damages were to be computed “Sundays and holidays, and such days-as the prosecution of the whole work may be suspended by the direction of said architect.” This excepting provision, if alone considered,, would seem to imply that the architect might suspend the whole work, at his discretion. But at the outset of the contract, where the functions of the architects are particularly enumerated, no authority to suspend the work is given them, and the clause which immediately precedes-the one respecting liquidating damages is, in part, as follows:
“The prosecution of the work shall be suspended at such times and for such periods as the said commission may from time to time determine. The-said contractor hereby further agrees that he will commence the aforesaid' work on such day and at such point or points as the said architects may designate, and fully complete the asme, in accordance with this agreement,, on or before the expiration of three calendar months from the date hereof; not including, however, such time as the prosecution of the whole work maybe suspended by- direction of the said commission.”
*847 From these several portions of the contract, when considered together, it may well be doubted whether even a specific direction by the architect, if not authorized by the commission itself, would justify a suspension of the work; but, as there was no evidence that would have supported a finding of consent by the architect, either with or without the sanction of the commission, the question of construction to which we have alluded need not be resolved.
It has not been asserted that the architect had in express terms consented to a suspension of the work upon the subways, and the contention that there was evidence from which it might have been found that he had implicitly done so cannot be sustained. No such finding could have been reasonably based upon the evidence relied upon in the plaintiff’s brief, or from any which, upon full examination, we have found in the record. The letters to which our attention has been especially invoked were not written to or by the architect, but to or by the commission, and therefore, if for no other reason, they were not pertinent to the question whether or not the work was suspended “with the consent and approval of the architect,” and to that precise question the first request of the plaintiff is confined. But there was nothing in these letters from which a consent to suspension, either by the architect or by the commission, could have been legitimately inferred. In the letter written by the plaintiff several weeks prior to the expiration of the time allotted for the completion of the subways, he said that he was having difficulty in obtaining the granite, but he did not ask for leave to suspend the work, and none was granted. The reply which the commission did make to it was to the effect that it desired the work to be done as soon as possible, and surely this cannot be supposed to import an agreement on its part to any postponement of completion beyond the time which the contract prescribed. In his-letter of March 22, 1899, the plaintiff explained that there had been delay on the part of the Shea Pink Granite Company in supplying him with the stone for the subways, and stated that his object in writing was “to show just how the matter stands, and give reasons for the delay there will be in carrying out the work over the original time-granted me in which to complete it”; but. again, he did not ask to be relieved from his agreement, or even invite a reply to his letter; and the law, in our opinion, did not entitle him, in the absence of any reply to it, to assume that the defendant intended to release him from his obligation to have the subways finished before the expiration of three calendar months from the date of the contract. “Where a written agreement exists, and one of the parties sets up an arrangement of a different nature, alleging conduct on the other side amounting to a substitution of this arrangement for the written agreement, he must clearly show, not merely his own understanding, but that the other party had the same understanding.” Bennecke v. Insurance Company, 105 U. S. 359, 26 L. Ed. 990. If the letter of the plaintiff had expressed any doubt of the binding force of his agreement, or had made any proposal for its modification, there might be some reason why the defendant should have responded, and why a failure to respond might be some small evidence of a want of good faith. But as- *848 the plaintiff did not even propose any change in the contract, it is difficult to understand how any alteration of it could have been effected by the mere silence of the defendant. Wheeler v. New Brunswick R. R. Co., 115 U. S. 36, 5 Sup. Ct. 1061, 1160, 29 L. Ed. 341; Royal Ins. Co. v. Beatty, 119 Pa. 6, 12 Atl. 607, 4 Am. St. Rep. 622.
The acts of the architect which it is claimed tended to show that the work upon the subways was suspended with his consent, pending the arrival of the stone from the Shea Pink Granite Company, may be briefly summarized. He.visited the quarry of that company; he reported to the commission that the stone could be obtained from it, and the time within which he thought it could be obtained; he urged the plaintiff, as he had repeatedly done before, “to bring pressure on the Shea people and hurry that stone business, and suggested to him that, if they could not do it, he make other arrangements for getting stone”; and he then and afterwards made suggestions to .the plaintiff about getting the Shea granite, and “in the line, generally, of urging him to hurry the work.” We fail to see, in the whole or any part of this conduct of the architect, anything to indicate that he consented to the suspension in question. It plainly shows that he was solicitous that the delay which had occurred should not be prolonged; but this is all it shows, and we think it impossible to infer from it the existence of a mutual understanding that the plaintiff’s agreement as to the time of completion was canceled or released. Bennecke v. Insurance Co., supra.
Mr. Brainerd, the architect, when under examination as a witness, said that, upon his visit to the quarry, he supposed the stone could be taken out “within the time required,” and it ha§ been argued that because this visit was made shortly after the contract time for completion had expired, it might be presumed that some extension of time had been assented to. But the record discloses that the witness was testifying under the erroneous impression that the time allowed by the contract itself extended! eight days longer than it actually did, and it plainly appears that to that time, and to no other, he intended to refer.
About six months after the date fixed by the contract for the completion of the subways, Carrere and Hastings, architects, gave the plaintiff a certificate for $3,600, and afterwards gave him a final certificate for $745; and it has been further and finally contended that the giving of these certificates was evidential that the architects had agreed to a suspension of the subways work. Both of them purport to refer to a contract “dated March 3, 1899,” but we will assume that they were really given under the contract of March 2, 1899, and in pursuance of the provision it contained for the issuance of such certificates, and for payments in accordance therewith. But this provision was not intended to annul the preceding clause by which the defendant was “authorized to deduct and retain, out of the moneys which may be due or become due to the said contractor,” the liquidated damages stipulated for. The amount due was to be certified by the architects, and the sum so certified, if not subject to deduction, was to be paid; but the certification of the sum from which the liquidated *849 damages might be deducted certainly did not involve an admission that a consent had been given by which the right to deduct them was extinguished.
2. In so far as the second of the plaintiff’s points refers to the contract of March 2, 1899, it has been sufficiently considered in connection with his first point. There was some conflict of testimony as to whether the plaintiff, or the defendant, was responsible for the delay in the performance of the work under the contract of July 10, 1899, and that matter the learned judge referred to the jury, with direction to make no deduction from the plaintiff’s claim on account of any delays which it might find were caused by the architects or representatives of the park commission. No exception to this part of the charge was taken, and the court would not have been justified in submitting to the jury the further question “whether the various delays that existed” under the second contract “were not with the consent and approval of the architects”; for there was absolutely no evidence upon which a finding that they had consented to any delay which was not caused by them, could have been reasonably based.
3. The payment of the $1,775 on the three orders dated May 23, 1901, was not “evidence of a waiver by the commission for any delay on the part of the plaintiff.” Each of these orders was drawn in favor of a subcontractor, and the payments were made to the respective payees, and not to the plaintiff. These subcontractors had done the work for which they were paid, and were not in any way responsible for the delays in question; and it is obvious that the defendant might well have deemed it expedient to satisfy their claims, without intending to forego its right to deduct and retain from the balance the liquidated damages to which, under the contract, it was entitled. It may be conceded that a waiver of performance of the plaintiff’s agreement as to the time of completion of the work could have been inferred from circumstances indicative of an intention to waive it. But neither the issuance of the architect’s certificates nor the payments to the subcontractors was a fact from which the existence of such intention was deducible. Of the certificates, enough has been already said, and that the payments referred to would not, in and of themselves, warrant an inference of waiver, is, in our opinion, unquestionable. Moulton v. McOwen, 103 Mass. 597. There was no agreement by the defendant that they should have that effect (McCombs v. McKennan [Pa.] 2 Watts & S. 219, 37 Am. Dec. 505) ; and it is not contended that the conduct or position of the plaintiff was in any way influenced or prejudiced by them, and, “in any point of view, it is difficult to understand how a legal liability can arise out of the mere silence of the party sought to be affected, unless he was subject to a duty of speech, which was neglected to the harm of the other party.” Royal Ins. Co. v. Beatty, 119 Pa. 9, 12 Atl. 607, 4 Am. St. Rep. 622.
The judgment of the Circuit Court is affirmed.
ACHESON, Circuit Judge, dissents.