### TURNER v. CITY OF FREMONT et al.

(Circuit Court, D. Nebraska. February 12, 1908.)

### No. 13.

1. CONTRACTS—CONSTRUCTION—PRIMARY OBJECT.

In construing a contract, the primary object is to discover the intention of the parties.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, § 730.]

2. SAME.

In construing a contract, the entire agreement must be considered, and, if possible, it should be construed so as to give effect to each of its provisions.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, § 734.]

3. MUNICIPAL CORPORATIONS—PAVING—BID CONSTRUED.

Where the specifications upon which paving bids were based provided that the city engineer might make certain tests of the brick to be used at any time during the progress of the work, and that if they did not stand the tests they should be rejected, and required the bidders to deposit samples of the brick on which their bids were based, such samples to be labeled, showing the commercial name of the brick, a statement in plaintiff's bid that he proposed to use "Capital" brick, as per samples submitted, did not work a modification of his proposal to do the work according to the plans and specifications so as to make the quality of his samples determine the quality of the brick to be used, unaided by the tests provided for in the specifications.

4. SAME—FAILURE TO COMPLY WITH BID—RELETTING OF CONTRACT—EFFECT.

Where plaintiff refused to enter into a municipal paving contract, after having been declared the lowest bidder, the city council, by declaring another bidder to be the lowest bidder, without readvertising for bids, did not rescind its finding that plaintiff was the lowest bidder, so as to release his deposit made to secure his entry into a contract.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 865.]

5. DAMAGES—BREACH OF CONTRACTS—FORFEITURES—CONSTRUCTION.

Though, generally, courts do not look upon forfeitures with favor, and will, where the contract is susceptible of so doing, construe such a provision as a penalty rather than liquidated damages, such construction should be given as will carry out the intent of the parties, if such intent is clearly ascertainable from the contract.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Damages, §§ 156, 157.]

6. SAME—BID FOR STREET PAVING.

> Where, when a bidder for street paving deposited checks for $3,700 to secure his entry into a contract on the acceptance of his bids, the damages to the city and the public which would flow from his failure to enter the contract could not be known, on a forfeiture, the deposit must be treated as liquidated damages for plaintiff's default, and not merely a penalty, though the actual damage, as shown by subsequent events, was only about $2,500.

> [Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Damages, §§ 170–175.]

Baily & Shipp, for plaintiff.

C. E. Abbott and F. Dolezal, for defendants.

W. H. MUNGER, District Judge. The city of Fremont is a municipal corporation of the state of Nebraska. In December, 1906, the city council created two paving districts known as Nos. 10 and 12, and in March, 1907, the board of public works published a notice inviting bids for the paving in said districts, said notice providing that the work should be done according to plans and specifications on file in the office of the city engineer and of the board of public works. Among the provisions of the specifications referred to were the following:

"The city reserves the right to reject any and all bids, or parts of bids, which may not be advantageous to the city.

"Each bidder will be required to deposit with his proposal a certified check on some bank of Fremont, Nebraska, for an amount equal to five per cent. of the value of the work as per bid, as a guarantee of good faith which is hereby agreed shall be considered as liquidated damages, which shall be forfeited to the city of Fremont if such a proposal is accepted, the work awarded and the bidder fails to enter into the contract in the form hereinafter prescribed with legally responsible sureties within ten days after written notice so to do have been given the bidder by the board of public works, when the contract and bond have been approved as by law provided, the bidder's certified check will be returned to him. * * *

"The pavement must be of the best quality of vitrified paving brick or brick block of uniform dimensions and true in form, and especially made for street paving purposes; the vitrified bricks shall not be less in size than two and one-quarter (2¼) by four (4) by eight (8) inches and the vitrified brick blocks not be less than three and one-fourth (3¼) inches thick, four (4) inches deep and eight (8) inches long, but only one size and make shall be used on the street in the improvement district being paved. Ten (10) samples of each kind of brick blocks bid upon duly labeled showing name of bidder and commercial name of the brick or brick block shall accompany the bids; failure to submit such samples shall invalidate the bid.

"The brick and brick blocks shall be of the kind known as 'repressed brick' and shall be repressed to the extent that the maximum amount of material is forced into them. They shall be free from lime and other impurities; shall be as nearly uniform in every respect as possible, shall be burned so as to secure the maximum hardness; so annealed as to reach the ultimate degree of toughness and thoroughly vitrified so as to make a homogeneous mass. The brick shall be free from all laminations caused by the process of manufacture, and free from fire cracks or checks of more than superficial character or extent.

"All brick so distorted in burning or with such prominent kiln marks as to produce an uneven pavement shall be rejected.

"To secure uniformity in vitrified paving brick and paving brick blocks delivered for use, the following tests, as recommended by the National Brick Manufacturers' Association, shall be made:

"Specimen vitrified paving brick and vitrified brick blocks shall be placed in

a machine known as a 'rattler' twenty inches long, twenty-eight inches in diameter, making thirty revolutions a minute. Nine to twelve bricks shall constitute a charge for a single test. In addition 300 pounds of cast-iron foundry shot shall be placed in the rattler. These shot will be of two sizes, viz.: one and one-half (1½) inch cubes, and oblong pieces two and one-half (2½) inches square section, and four and one-half (4½) inches long. The number of revolutions for a standard test shall be eighteen hundred, and if the loss of weight by abrasion or impact during such test shall exceed 18 per cent. of the original weight of brick or brick blocks tested then the brick or brick blocks shall be rejected. All pieces of one pound weight or less shall be counted as loss. · An official test to be the average of two of the above tests. The city engineer may, at any time during the progress of the street work, take any number of the bricks or brick blocks for testing purposes, and should they not meet the requirements, other satisfactory brick or brick blocks shall be substituted at once."

Mr. Turner, the plaintiff, on April 5, 1907, submitted bids to do the paving in said two paving districts. His proposal in District No. 10 contained among other things, the following provisions:

"The undersigned, after examining plans, specifications and work to be done necessary to complete the paving, curbing and grading of District No. —— in the city of Fremont, Nebraska, proposes to furnish all the material and do all the work in compliance with the plans and specifications on file in the office of the city engineer, for the following prices, to wit: * * *

"The undersigned hereby agrees to enter into a contract within ten days of the notice of that award, should his proposal be accepted. * * * In the event of the failure to enter into such contract within ten days of the notice of the award, then the inclosed check for $2,100.00 as a guarantee thereof shall be forfeited as prescribed in the specifications,"

—which proposal was signed by plaintiff, and his post-office address given. Underneath the same was written the following:

"If awarded the contract, I propose to use 'Capital' brick or block, as per samples submitted."

His bid for District No. 12 contained the same provisions, excepting that, instead of having written underneath his name the brick proposed to be used, as in the bid for District No. 10, there was written at the top of the proposal the following words:

"I propose to use 'Capital' brick or block, as per samples submitted."

And the check accompanying the same was for $1,600.

The board of public works recommended to the city council the acceptance of said bids of plaintiff, they finding the plaintiff to be the lowest responsible bidder. The city council, with the approval of the mayor, found that plaintiff was the lowest responsible bidder, accepted his proposal, and awarded the contract to him. He was duly notified, and two contracts, one for each district, were forwarded to him to be executed, said contracts providing that the work was to be done in accordance with the plans and specifications referred to. Plaintiff refused to execute said contracts, but submitted to the board of public works two other contracts, providing that the work should be done according to the plans and specifications, except that the brick to be used were to be only according to the samples which he submitted. He refused to execute a contract requiring the brick to be subjected to the tests required by the specifications, claiming that the written provisions referred to in his bid, to wit, that he proposed to

use bricks of the samples submitted, was a modification of the proposal that the work was to be done according to the plans and specifications. The city council thereupon declared that, because of Turner's refusal to execute the contracts in accordance with his bid, the checks which he had deposited should be forfeited. ·

The checks so deposited by plaintiff were drawn upon the Fremont National Bank, payable to his own order, and were duly certified by the bank. The checks were indorsed upon the back as follows:

"Pay to the order of city, and E. N. Morse, Chairman of Board of Public Works, Fremont, Neb., in event that work bid for is awarded undersigned and refusal is made to enter into legal contract as per specifications and bid dated April 5th, 1907.                                              J. W. Turner."

Plaintiff has brought this suit to recover the amount of said checks, and to enjoin the bank from paying, and the city treasurer from receiving payment of, the said checks.

The first question to be determined is whether or not plaintiff refused to enter into a contract in conformity with his bid. That the advertisement for bids, plaintiff's bid, and the acceptance thereof by the proper city authorities constituted the agreement between them is unquestioned, the controversy being as to the interpretation thereof. it is fundamental that the primary object of construction in contract law is to discover the intention of the parties. To do this, the entire agreement is to be considered. Not what separate parts may mean, but what the agreement means when considered as a whole, and, if possible, the agreement should be construed so as to give effect to each provision inserted therein. With these principles in view, it is not difficult to determine what was the agreement between the parties and as understood by them.

The notice inviting bids provided, as we have seen, that the work was to be done according to certain plans and specifications. The specifications indicated the character of the material to be used, and the test to which the brick were to be subjected to determine whether or not they complied with the provisions of the contract, and it provided that these tests should be made by the city engineer at any time he desired during the progress of the work, and if the brick did not comply with the tests they were to be rejected and other brick substituted in their stead. The specifications also provided that each bidder should deposit with his bid 10 samples of the kind of brick upon which his bid was based, such samples to be labeled, showing the commercial name of the brick or brick blocks. This, however, did not do away with the express provision that the brick should be from time to time, as the city engineer desired, subject to the tests provided by the specifications. The statement in the bid of plaintiff that he proposed to use "Capital" brick, as per samples submitted, was merely a statement that the samples which he submitted were the samples asked for by the specifications, and was not intended as a statement that the brick with which he proposed to do the work, if according to sample, should not be required to undergo the test expressly provided for in the specifications. This holding gives full force and effect to each provision of the contract. If the specifications had not

required the bidders to present samples, and plaintiff, having presented samples with his bid with the statement that he proposed to use brick as per samples, his argument that such provision was to be a substitute for the test provision would have some force. Considering the fact that the specifications required samples to be submitted with the commercial name thereof upon which the bidder's bid was based, together with the tests which might be made from time to time by the city engineer in determining whether the brick used complied with the specifications, it seems to me clear that the statement by the plaintiff that he purposed to use brick, the commercial name of which was "Capital," was only a statement that the samples were the samples called for by the specifications. The contract was to be let to the lowest responsible bidder. The object of the samples, and the commercial name thereof, was to enable the authorities to investigate, ascertain the probabilities of the contractor being able to procure brick of that commercial name in sufficient quantities to fulfill the contract, and whether the brick of that commercial name would generally comply with the specifications. It was not intended, and could not have been understood by plaintiff in making his bid, that the quality of the samples alone was to determine the quality of the brick to be used in the construction of the work, unaided by the tests provided for in the specifications. I think the evidence clearly establishes a refusal on the part of plaintiff, after his bid had been accepted and the contract awarded to him, to enter into such a contract as was required by the specifications, and as referred to in his indorsement upon the certified checks. The evidence shows, as we have seen, that after plaintiff's refusal to enter into such contract the city council declared his deposit forfeited, and then declared Mr. Murphy to be the lowest bidder. This, it is argued upon the part of the plaintiff, constituted a rescission of the former finding that plaintiff was the lowest bidder. I cannot so hold. When it was found that plaintiff was the lowest bidder, and the contract awarded to him, and he refused to enter into the contract provided for, the rights and obligations, as between the city and plaintiff then became fixed, and I do not think were effected by the city subsequently awarding the contract to Mr. Murphy, by declaring him the lowest bidder, as, at that time, plaintiff, having by his own act eliminated himself from the transaction, could no longer be considered, and, with him eliminated, it was proper for the municipality to declare that Mr. Murphy was then the lowest responsible bidder. At least, plaintiff cannot complain because the city awarded the contract to Murphy without readvertising.

The next and only remaining question to be considered is whether or not the amount of the checks deposited is to be treated and considered as liquidated damages for plaintiff's failure to enter into a contract, or only a penalty. While it may be stated as a general proposition that courts do not look upon forfeitures with favor, and will, where the contract is susceptible of so doing, construe such provisions as a penalty rather than as liquidated damages, yet I think it may be said that the true rule is to give such a construction as will

159 F.—15

carry. out the intent of the parties, if such intent is clearly ascertainable from the contract. That the decisions of the state courts are not uniform may be shown by the citation of two authorities. Willson v. Mayor, etc., of Baltimore, 83 Md. 212, 34 Atl. 774, 55 Am. St. Rep. 339, was a case where sealed proposals for furnishing city supplies were advertised for. The bids provided that each proposal must be accompanied by a certified check for $500. If the successful bidder enter into contract with bond without delay, his check was to be returned as were those of unsuccessful bidders. The contract was awarded, but the bidder was unable to obtain a surety, and the contract was let to another. It was held that the deposit was a penalty, and could be enforced only to the extent of the actual loss resulting from a failure to complete the contract. Village of Morgan Park v. Gahan, 136 Ill. 515, 26 N. E. 1085, was a case where a deposit was made with a bid to enter into a contract to do certain paving. The party to whom the bid was awarded refused to enter into the contract, and he brought suit to recover the deposit. It was held that he could not recover. In the opinion it was said:

"The rule that courts incline against forfeitures has no application to this case. There is no question of construction here involved, and it is well settled that that rule will never be carried to the extent of relieving parties against the express terms of their own contracts."

In Abbott's Municipal Corporations, vol. 1, § 272, it is said:

"To prevent fraud or collusion, and to secure bids from those who are financially responsible, and will perform the contract should it be awarded them, in the public advertisement calling for bids conditions are valid that bidders must furnish a bond with good and sufficient sureties for the proper performance of the work, upon the awarding of the contract, or that a certain deposit must accompany their bid, to be forfeited in case the award is made to them and they refuse to execute a contract based upon such award."

The following federal decisions are applicable to this case: Brooks v. City of Wichita, 114 Fed. 297, 52 C. C. A. 523, was a case in which a deposit of $10,000 by the contractor was made, to be forfeited as liquidated damages in case of failure to construct for the city an electric lighting plant. The plant was not erected, and suit was brought to recover the deposit. It was held that no recovery could be had. Judge Caldwell, speaking for the Court of Appeals, said:

"Cases of penal bonds between private persons, where the damages resulting from a breach are readily ascertainable, have no application to this case. A city is a public corporation, designed for local government. It is an agency of the state to assist in the civil government of the territory and people of the state embraced within its limits. It has no private interests. It is a public agency and acts for the public, and when it contracts for the establishment and maintenance by a private corporation of waterworks, gas or electric lights, street railroads, and other like public utilities, it does so in the performance of its public functions, and for the purpose of promoting the convenience and preserving the health of its citizens, and protecting them in their persons and property. And when a private corporation which has engaged with the city to construct and maintain one of these public utilities—as in the case at bar, to light the public streets of the city—fails to comply with its contract in that regard, the city, in its corporate capacity, does not suffer any loss or damage capable of judicial ascertainment. Nor is the inconvenience and loss suffered by the public, on whose behalf and for whose benefit and protection the contract was made, capable of ascertainment. * * * For this reason

it is common for municipal corporations, in making contracts of this character, to stipulate for the payment of a fixed sum as liquidated damages in case the public utility is not constructed and put in operation within the time limited by the contract. * * * This is the only method by which the city can obtain anything like an adequate compensation for the loss and damage sustained by the public by the breach of such a contract."

In Sun Printing & Pub. Ass'n v. Moore, 183 U. S. 642, 22 Sup. Ct. 240, 46 L. Ed. 366, it was held that the naming of a stipulated sum to be paid for the nonperformance of a covenant was conclusive upon the parties in the absence of fraud or mutual mistake. In Woods et al. v. Niagara Falls Paper Co., 121 Fed. 818, 58 C. C. A. 256, it was held that, in a contract to erect certain machinery on plaintiff's premises, a provision that defendant would pay $50 per day as liquidated damages for each turbine which remained uncompleted after the date named could not be construed as a penalty, and that defendant could not reduce the amount of recovery by showing that plaintiff sustained no loss by the delay. To the same effect is the case of Stephens v. Essex County Park Com., 143 Fed. 844, 75 C. C. A. 60. In the case at bar, at the time that the bids were advertised for, and plaintiff made his bid, the damages, if any, which would be sustained by reason of his failure to enter into the contract, could not be ascertained. What the loss would be to the public, by reason of delay which might result from readvertising and reletting, could not be known.

While the evidence discloses that the city subsequently let the contract to one Murphy, and procured the paving for some $2,500 (in round numbers) more than complainant's bid, and that the actual damage to the city and its taxpayers, as shown by subsequent results, was some $1,200 less than the amount of plaintiff's deposit, yet such fact does not aid in determining the character of the agreement under which the deposit was made. If the agreement was one of security or a penalty only, then of course only actual damages could be recovered, but if the agreement was one of liquidated damages, and the parties held bound to the agreement as one of liquidated damages, then the proof as to actual damages becomes immaterial.

On the authority of Brooks v. City of Wichita, Sun Printing & Pub. Ass'n v. Moore, Woods et al. v. Niagara Falls Paper Co., and Stephens v. Essex County Park Com., supra, I must hold that the certified checks deposited in this case were intended by the parties, as shown by their contract, to be absolutely payable to the city upon the plaintiff's failure to enter into a contract to do the paving, should his bid be accepted, and the work awarded to him.

Finding as I have that he failed to enter into the contract without just cause, it follows that he cannot recover, and the bill is dismissed for want of equity.