### TURNER v. CITY OF FREMONT et al.

(Circuit Court of Appeals, Eighth Circuit. April 26, 1909.)

No. 2,835.

1. MUNICIPAL CORPORATIONS (§ 352*) — CONTRACTS — BID FOR PAVING — CONSTRUCTION.

Where the specifications upon which paving bids were based provided that the city engineer might make certain tests of the brick to be used at any time during the progress of the work, and that if they did not stand the tests they should be rejected, and also required bidders to deposit samples of the brick on which their bids were based, such samples to be labeled, showing the commercial name of the brick, a statement in plaintiff's bid that he proposed to use "Capital" brick as per sample submitted did not work a modification of his proposal to do the work according to the plans and specifications, so as to make the quality of his samples determine the quality of the brick to be used, and do away with the provision requiring them to answer the specified tests.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 352.*]

2. MUNICIPAL CORPORATIONS (§ 337*) — CONTRACTS — ACCEPTANCE OF BID FOR PAVING.

Where, after plaintiff had been declared the lowest bidder for paving work and his bid accepted by a city, he refused to enter into a contract, and a deposit required and made by him was declared forfeited, the

---

rights of the parties were thereby fixed, and were not affected by the subsequent action of the city council in declaring another the lowest bidder and accepting his bid.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 337.*]

3. DAMAGES (§ 78*)—LIQUIDATED DAMAGES AND PENALTIES—CONSTRUCTION OF STIPULATION.

An agreement between a city and a bidder for paving work that a deposit of 5 per cent. of the amount of his bid required to be made by the bidder "shall be considered as liquidated damages" and forfeited to the city if the bidder's proposal is accepted and he fails to enter into a contract will be construed in accordance with its terms, as one for liquidated damages and not for a penalty, and in view of the fact that the actual damages were uncertain, and could not then be known, such agreement is valid and enforceable, without regard to the amount of the actual damages as afterward ascertained.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 157–163; Dec. Dig. § 78.*]

Appeal from the Circuit Court of the United States for the District of Nebraska.

For opinion below, see 159 Fed. 221.

William H. Baily (Baily & Stipp, on the brief), for appellant.
C. E. Abbott (F. Dolezal, on the brief), for appellees.

Before SANBORN and ADAMS, Circuit Judges, and RINER, District Judge.

RINER, District Judge. This was a suit in equity, brought by the plaintiff to enjoin the city of Fremont, E. N. Morse, L. D. Richards, and John C. Cleland, defendants herein, and each of them, from retaining in their possession two certified checks or collecting the money thereon and appropriating it to the use of the city of Fremont. The bill further prayed that the other defendant, the Fremont National Bank, be enjoined from paying said certified checks or the money represented thereby to either of the defendants first named or any one claiming under them.

It was alleged in the bill that the defendant the city of Fremont is a municipal corporation organized under the laws of the state of Nebraska, and that the defendant E. N. Morse was the chairman of the board of public works; that the defendant L. D. Richards was secretary of the board, and the defendant John C. Cleland was the treasurer of said city, respectively; that the defendant the Fremont National Bank was a national banking association having its place of business in the city of Fremont. In December, 1906, the city council of the city of Fremont created two paving districts in the city, known as "District No. 10" and "District No. 12," and thereafter in March, 1907, the board of public works by notice duly published invited bids for the paving to be done in the two districts; the notice advising bidders that the work was to be done according to the plans and specifications therefor on file in the office of the city engineer. By the terms and conditions of the specifications the city reserved the right to reject any and all bids or parts of bids which seemed not to be advantageous

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to the city, and required each bidder to deposit with his proposal a certified check for an amount equal to 5 per cent. of the value of the work, as specified in his bid, "which," the specifications further provided, "is hereby agreed shall be considered as liquidated damages, which shall be forfeited to the city of Fremont if such a proposal is accepted, the work awarded, and the bidder fails to enter into the contract in the form hereinafter prescribed with legally responsible sureties within 10 days after written notice so to do have been given the bidder by the board of public works." The quality and dimensions of the brick or brick blocks to be used were described, and the bidder was required to submit with his bid 10 samples of the kind of brick or brick blocks bid upon, duly labeled, showing the name of the bidder and the commercial name thereof. The specifications further provided that the brick and brick blocks should be of the kind known as "repressed brick," and, further, that the brick used should be subjected to the following tests:

"Specimen vitrified paving brick and vitrified brick blocks shall be placed in a machine known as a 'rattler,' twenty inches long, twenty-eight inches in diameter, making thirty revolutions a minute. Nine to twelve bricks shall constitute a charge for a single test. In addition 300 pounds of cast-iron foundry shot shall be placed in the rattler. These shot will be of two sizes, viz., one and one-half (1½) inch cubes, and oblong pieces two and one-half (2½) inches square section, and four and one-half (4½) inches long. The number of revolutions for a standard test shall be eighteen hundred, and if the loss of weight by abrasion or impact during such test shall exceed 18 per cent. of the original weight of brick or brick blocks tested, then the brick or brick blocks shall be rejected. All pieces of one pound weight or less shall be counted as loss. An official test to be the average of two of the above tests. The city engineer may, at any time during the progress of the street work, take any number of the bricks or brick blocks for testing purposes, and, should they not meet the requirements, other satisfactory brick or brick blocks shall be substituted at once."

April 5, 1907, pursuant to the notice inviting bids for this work and after examining the plans and specifications, plaintiff submitted separate bids for the two districts, numbered 10 and 12. In these bids he proposed to do the work, in compliance with the plans and specifications in the office of the city engineer, for certain prices set out in the bid, and, further, to enter into a contract within 10 days after notice that the contract had been awarded to him, if his proposal was accepted, and in the event of his failure to enter into such a contract within 10 days after receipt of the notice that the check inclosed with the notice "shall be forfeited as prescribed in the specification." In the proposal for paving district No. 10, after his signature, he added the following:

"If awarded the contract, I propose to use 'Capital' brick or block, as per sample submitted."

On the bid for paving district No. 12 there was written at the top of the bid:

"I propose to use 'Capital' brick or block, as per sample submitted."

The check accompanying the bid for district No. 10 was for $2,100, and for district No. 12 $1,600, and both checks were indorsed on the back as follows:

"Pay to the order of city, and E. N. Morse, chairman of board of public works, Fremont, Neb., in event that work bid for is awarded undersigned and refusal is made to enter into legal contract as per specifications and bid dated April 5th, 1907.                                        J. W. Turner."

The plaintiff's bids were accepted by the city, he was notified, and two contracts, one for each district, were forwarded to him to be executed. These contracts provided in each case that the work should be done according to the plans and specifications therefor. The plaintiff refused to sign the contracts, and submitted to the board of public works two other contracts, in which it was provided that the work should be done according to plans and specifications, except that the brick to be used were to be according to the samples submitted by him, and also that if the work should be delayed "by strikes, bad weather, failure of others to promptly deliver materials, or from any other cause not due to the fault or neglect of the party of the second part, then the time for completing such improvements shall be extended for a period equivalent to such delay." He refused to sign the contracts requiring the brick to be submitted to the tests provided for in the specifications for the work, contending that the written provisions, "If awarded the contract, I propose to use 'Capital' brick or block, as per sample submitted," was a modification of the proposal that the work was to be done according to the plans and specifications. Upon the plaintiff's refusal to execute the contracts submitted by the city requiring the work to be done as provided in the plans and specifications, the city council declared the checks accompanying his bids forfeited, and the contract was then let to one Hugh Murphy, the next lowest bidder.

It is contended by the plaintiff that the contracts tendered by him conformed to his bids. Upon this question, Judge Munger, who heard this suit, said:

"That the advertisement for bids, plaintiff's bid, and the acceptance thereof by the proper city authorities constituted the agreement between them is unquestioned; the controversy being as to the interpretation thereof. It is fundamental that the primary object of construction in contract law is to discover the intention of the parties. To do this, the entire agreement is to be considered; not what separate parts may mean, but what the agreement means when considered as a whole, and, if possible, the agreement should be construed so as to give effect to each provision inserted therein. With these principles in view, it is not difficult to determine what was the agreement between the parties and as understood by them.

"The notice inviting bids provided, as we have seen, that the work was to be done according to certain plans and specifications. The specifications indicated the character of the material to be used, and the test to which the brick were to be subjected to determine whether or not they complied with the provisions of the contract, and it provided that these tests should be made by the city engineer at any time he desired during the progress of the work, and if the brick did not comply with the tests they were to be rejected and other brick substituted in their stead. The specifications also provided that each bidder should deposit with his bid 10 samples of the kind of brick upon which his bid was based, such samples to be labeled, showing the commercial name of the brick or brick blocks. This however, did not do away with the express provision that the brick should be from time to time, as the city engineer desired, subject to the tests provided by the specifications. The statement in the bid of plaintiff that he proposed to use 'Capital' brick, as per samples submitted, was merely a statement that the samples which he submitted were the samples asked for by the specifications, and was not

intended as a statement that the brick with which he proposed to do the work, if according to sample, should not be required to undergo the test expressly provided for in the specifications. This holding gives full force and effect to each provision of the contract. If the specifications had not required the bidders to present samples, and plaintiff had presented samples with his bid, with the statement that he proposed to use brick as per samples, his argument that such provision was to be a substitute for the test provision would have some force. Considering the fact that the specifications required samples to be submitted with the commercial name thereof upon which the bidder's bid was based, together with the tests which might be made from time to time by the city engineer in determining whether the brick used complied with the specifications, it seems to me clear that the statement by the plaintiff that he proposed to use brick, the commercial name of which was 'Capital,' was only a statement that the samples were the samples called for by the specifications. The contract was to be let to the lowest responsible bidder. The object of the samples, and the commercial name thereof, was to enable the authorities to investigate, ascertain the probabilities of the contractor being able to procure brick of that commercial name in sufficient quantities to fulfill the contract, and whether the brick of that commercial name would generally comply with the specifications. It was not intended, and could not have been understood by plaintiff in making his bid, that the quality of the samples alone was to determine the quality of the brick to be used in the construction of the work, unaided by the tests provided for in the specifications.

"I think the evidence clearly establishes a refusal on the part of plaintiff, after his bid had been accepted and the contract awarded to him, to enter into such a contract as was required by the specifications, and as referred to in his indorsement upon the certified checks." 159 Fed. 221.

We fully concur in the foregoing conclusions reached by the Circuit Court. The mere statement upon plaintiff's bids that he proposed to use "Capital" brick did not relieve him from the obligation to furnish brick that were capable of withstanding the test provided for in the specifications. He might have used "Capital" brick, provided the brick would withstand the test which the specifications called for. He was familiar, as the record shows, with the specifications and the test to which the brick to be used in this work were to be subjected, and his bid was made with full knowledge of this requirement.

It is next insisted by the plaintiff that the city council, by declaring that Hugh Murphy was the next lowest responsible bidder, revoked or rescinded its action in accepting plaintiff's proposal. There is no merit in this contention. The plaintiff, by his failure to enter into the contract in conformity to his bid, terminated his relations with the city so far as this work was concerned, and is in no position to raise this question. Colo. Pav. Co. v. Murphy, 78 Fed. 28, 23 C. C. A. 631, 37 L. R. A. 630.

It is further insisted by plaintiff that the checks accompanying his bids were deposited as security and as a penalty only, and cannot be forfeited or held as liquidated damages. The specifications required each bidder to deposit with his bid a certified check as a guarantee of good faith and provided, "which it is hereby agreed shall be considered as liquidated damages, which shall be forfeited if the bidder fails to enter into a contract." The bids submitted provided that, in the event of a failure to enter into a contract within 10 days after notice of award, the check accompanying the bid "shall be forfeited as prescribed in the specifications." In Whitney v. Wyman, 101 U. S. 392, 25 L. Ed. 1050, the Supreme Court. in construing a contract, said:

"As the meaning of the lawmaker is the law, so the meaning of the contracting parties is the agreement. Words are merely the symbols they employ to manifest their purpose that it may be carried into execution. If the contract be unsealed and the meaning clear, it matters not how it is phrased. * * * The intent developed is alone material, and when that is ascertained it is conclusive."

As we understand counsel's argument, it is to this effect: That the court not only has the right, but that it is its duty, to disregard the particular expressions of parties and to consider the amount named merely as a penalty, even though it is specifically stated in the specifications that the amount of the checks are to be "considered as liquidated damages." This contention, we think, cannot and ought not to be sustained. As far back as Lord Mansfield's time, in Lowe v. Peers, 4 Burr. 2225, it was said:

"Courts of equity will relieve against a penalty, upon a compensation; but, where the covenant is to pay a particular liquidated sum, a court of equity cannot make a new covenant for a man; nor is there any room for compensation or relief."

And in Wallis v. Smith, 21 Ch. D. 243, Jessel, Master of the Rolls, said:

"He perfectly well knew that, whatever had been the doctrine of equity at one time, it was not then the doctrine of equity to give relief on the ground that agreements were oppressive, where the parties were of full age and at arm's length. It is very likely, and I believe it is true historically, that the doctrine of equity did arise from a general notion that these acts were oppressive. At all events, long before his time, it had been well settled in equity that equity did relieve from forfeiture for nonpayment of money; and I think I may say, in modern times, from nothing else."

The inclination of courts of equity to decline to grant relief against a contract merely because of inadequacy of consideration well illustrates its disposition not to interfere unnecessarily with the contracts of individuals. It declines to grant relief merely because of inadequacy of price, or any other inequality in a bargain, unless, indeed, the bargain be so unconscionable as to warrant the presumption of fraud, imposition, or undue influence. Story, Eq. Jur. §§ 244, 245.

While there is some apparent diversity of opinion upon this question in the different courts, we think the weight of authority both in England and in this country does not lend support to the contention that parties may not bona fide, in a case where the damages are of an uncertain nature, as was true in this case at the time of the breach of the agreement, estimate and agree upon the measure of damages which may be sustained from the breach of the contract. On the contrary, we think the rule is well established that the intention of the parties is to be arrived at by a proper construction of the contract made between them, and that whether a particular stipulation to pay a sum of money is to be treated as a penalty or as liquidated damages is to be determined alone by the contract fairly construed, and where the damages are uncertain, and have been liquidated by an agreement, it is the duty of the court to enforce the contract. This principle is clearly stated by Chief Justice Nelson, in Dakin v. Williams, 17 Wend. (N. Y.) 447, as follows:

"The next question presented upon the above conclusion is whether the sum of $3,000 is to be viewed as damages liquidated by the contract of the parties, or only in the light of a penalty? There are many cases in the English books in which this question has been very fully examined and considered; but it would be an unprofitable consumption of time to go over them with a view or expectation of extracting any useful general principle that could be applied to this case. The following are the leading cases: Astley v. Weldon, 2 Bos. & Pul. 346; Burton v. Glover, Holt's N. P. R. 43, and note; Reilley v. Jones, 1 Bing. 302; Davies v. Penton, 6 Barn. & Cres. 216; Crisdee v. Bolton, 3 Carr. & Payne, 240; Randall v. Everest, 2 Carr. & Payne, 577; Kemble v. Farren, 6 Bing. 141. In our court are the following: Dennis v. Cummins, 3 Johns. Cas. (N. Y.) 297, 2 Am. Dec. 160; Slosson v. Beadle, 7 Johns. 72; Spencer v. Tilden, 5 Cow. (N. Y.) 144, and note page 150; Nobles v. Bates, 7 Cow. (N. Y.) 307; Knapp v. Maltby, 13 Wend. (N. Y.) 587. From a critical examination of all these cases, and others that might be referred to, it will be found that the business of the court, in construing this clause of the agreement, as in respect to every other part thereof, is to inquire after the meaning and intent of the parties; and, when that is clearly ascertained from the terms and language used, it must be carried into effect."

And in Bagley v. Peddie, 16 N. Y. 469, 69 Am. Dec. 713, it is said:

"If the language of the parties evince a clear and undoubted intention to fix the sum mentioned as liquidated damages in case of default of performance of some act agreed to be done, then the court will enforce the contract, if legal in other respects." Wood et al. v. Niagara Falls Paper Co., 121 Fed. 818, 58 C. C. A. 256; Sun Printing & Pub. Ass'n v. Moore, 183 U. S. 642, 22 Sup. Ct. 240, 46 L. Ed. 366; Stephens v. Essex County Park Com., 143 Fed. 844, 75 C. C. A. 60; Brooks v. City of Wichita, 114 Fed. 297, 52 C. C. A. 209.

It is urged on behalf of the plaintiff that, if the plaintiff made default, the court should ascertain what the damages amount to and award plaintiff a decree for the balance of his deposit. We do not think this case falls within the rule, recognized by the courts, that, where a gross sum is provided for the failure of a party to perform some particular covenant of a contract, such an amount will be held to be a penalty, and not considered as liquidated damages. The case of Van Buren v. Digges, 11 How. 461, 13 L. Ed. 771, is a good illustration of the rule which the plaintiff seeks to have applied here. It is there said:

"The clause of the contract providing for the forfeiture of 10 per centum of the amount of the contract price, upon failure to complete the work by a given day, cannot properly be regarded as an agreement or settlement of liquidated damages. The term 'forfeiture' imports a penalty. It has no necessary or natural connection with the measure or degree of injury which may result from a breach of contract, or from an imperfect performance. It implies an absolute infliction, regardless of the nature and extent of the causes by which it is superinduced."

It will at once be seen, we think, from the mere statement of it, that the rule has no application to the question now under consideration. While it is true that the evidence disclosed that the city's actual loss, by reason of the failure of plaintiff to carry out his contract, was but $2,500, yet at the time the plaintiff entered into the contract the amount which the city would suffer by reason of his failure to perform could not possibly be ascertained. It might have been more than the deposit. It might have been less. No one could tell. It turned out in this case that it was less than the amount of the deposit;

but that fact cannot change the situation, so far as the plaintiff's right to recover back the amount deposited, or any part of it, is concerned.

The conclusion reached is that the decree of the Circuit Court was right, and it is affirmed.