BARBER ASPHALT PAVING COMPANY v. CITY OF ST. PAUL.[1]

May 4, 1917.

Nos. 20,428—(63).

**Municipal corporation — advertisement for bids — amount of bond or check not liquidated damages.**

1. The commissioner of public works of the city of St. Paul, pursuant to the order of the common council, published a notice inviting bids for furnishing the city with 345 tons of asphalt for resurfacing certain streets. The notice stated that a bond for 20 per cent of the bids or a certified check for 10 per cent thereof must accompany each bid "as a surety for the making and execution of a contract." This language does not indicate an intention to regard the bond or check as liquidated damages, nor can that construction be placed upon it when the situation of the parties and the surrounding circumstances are given due weight.

[1] Reported in 162 N. W. 470.

**Same — forfeiture.**

2. A provision found in a section of the charter relating to bids not of the sort here involved does not authorize a forfeiture of plaintiff's checks as liquidated damages.

Action in the district court for Ramsey county to recover $1,100, the proceeds of two checks accompanying plaintiff's bids for furnishing asphalt misappropriated by defendant. The case was tried before Dickson, J., who made findings and ordered judgment in favor of plaintiff for the amount demanded. Defendant's motion for amended findings was granted in part. From the judgment entered pursuant to the order for judgment, defendant appealed. Affirmed.

*O. H. O'Neill,* for appellant.

*Denegre & McDermott,* for respondent.

HOLT, J.

The city council of St. Paul, by separate orders, directed portions of Holly and Portland avenues to be resurfaced, the work to be done by the commissioner of public works and the needed material to be purchased. By advertisement, dated August 8, 1913, separate bids were invited for the furnishing of 170 tons of asphalt for the Holly avenue job and 175 tons for the Portland avenue. Plaintiff responded with a bid for each job at the price of $19.50 per ton, each bid being accompanied with a certified check in the sum of $550. Plaintiff's proposals were accepted, but it declined to enter a contract in accordance with the specifications referred to in the advertisements inviting bids. Thereafter the specifications were somewhat modified and bids or proposals again invited, under which the needed asphalt was procured from another firm for $18.60 per ton. The city thereupon forfeited plaintiff's checks, and this action to recover their value was brought, resulting in a judgment for plaintiff. Defendant appeals.

In the published call for bids or proposals is found this condition: "A bond in the sum of 20 per cent of the amount bid, with two sureties, residents of the city of St. Paul, or a surety company bond in the same amount, or a certified check for 10 per cent of the amount bid, must accompany each proposal as a surety for the making and execution of a

contract." Appellant's contention is that the quoted condition, construed in connection with surrounding circumstances, means that the checks were given and accepted as liquidated damages in case of failure to enter a contract upon acceptance of the bid. It is also claimed that the following provision in section 314 of the city charter leads to the same result:

"The bids for the doing of such work shall be sealed bids, directed to the board of public works of the city of St. Paul, and shall be sealed in such manner that they cannot be opened without detection, and shall be accompanied by a bond to the city of St. Paul in a sum not less than twenty (20) per cent of the cost of the work, according to the price bid, as nearly as can be ascertained, executed by the bidder and two (2) responsible sureties, conditioned that he shall execute the work for the price mentioned in his bid and according to plans and specifications, in case the contract shall be awarded to him. And in case of default on his part to execute the contract and perform the work, said bond may be sued and judgment recovered thereon by the said city, for the full amount thereof, in any court having jurisdiction of the amount * * * Provided, that in lieu of the bond provided for, the bidder may deposit with said bid a duly certified check upon any of the banks of the city of St. Paul, payable to the clerk of said board, for the use of the city of St. Paul. Such checks shall be for ten (10) per cent of the amount bid, as nearly as can be ascertained. All checks shall be returned to the person depositing the same after the bids are opened. except that of the successful bidder, which shall be retained as a guaranty that he will enter into a contract with the city of St. Paul for the performance of the work ordered to be done."

The judgment is concededly right, unless the checks are to be regarded as liquidated damages, for there is no proof of actual loss to the city, in fact, the needed material was obtained at a less price and no evidence was offered to show that any difference existed in the value of the asphalt for the purposes for which it was to be used under the two specifications.

The language quoted from the published notice inviting bids, being of the city's own choosing, should not be held to extend the bidder's hazards beyond its fair terms. No attempt is therein made to designate

the amount named in the required bond or check as liquidated damages, nor is there a statement that the money represented by either might be forfeited, as was done in the cases of Brooks v. City of Wichita, 114 Fed. 297, 52 C. C. A. 209; Turner v. City of Fremont, (C. C.) 159 Fed. 221, and Davin v. City of Syracuse, 69 Misc. 285, 126 N. Y. Supp. 1002, relied on by appellant. On the other hand the word "surety" is used, and the ordinary legal significance thereof is an obligation to reimburse or compensate the actual loss resulting from a default. It is undoubtedly true that courts lay great stress upon the intention of the parties in determining whether a stipulated amount in a transaction of this nature should be held a penalty or liquidated damages; and this, sometimes, in disregard of the language actually employed by the parties. And the intention may be inferred from the position of the contracting parties and surrounding circumstances. But we are not greatly impressed with appellant's argument on this score. For it seems to us that the immediate object and purpose of the bond or check in the present case was to secure indemnity against that loss which would result from being obliged to pay more for the material required than the accepted bid agreed to deliver it for, including also a possible cost of readvertising for bids. Such loss does not appear so difficult of ascertainment as to suggest a reason for holding the parties intended these "surety" checks liquidated damages. Indeed, the actual loss is ordinarily accurately and readily fixed by the difference in price of the accepted bid and that of the next lowest responsible bidder. This consideration is alone sufficient to distinguish the instant case from that of Taylor v. Times Newspaper Co. 83 Minn. 523, 86 N. W. 760, 85 Am. St. 473, cited by appellant. Another reason for not holding checks, deposited under the invitation for bids here involved, liquidated damages is the injustice liable to occur to the one who might choose to secure the bid by a bond instead of by a check, for he must forfeit twice the amount of the check even though the actual loss might be a trifle or nothing at all. Provisions in advertisements calling for proposals, in charters, or ordinances which lead to such unfair results ought not to be broadened by construction so as to increase the mischief. We cannot think that the bond or check named in the proposal for bids was intended as payment of liqui-

dated damages to the public for the inconvenience that might be caused by delay because of a readvertising for bids. As already stated, accepting the next lowest bid would cause no appreciable delay. Moreover, the city reserved the right to reject all bids, this would indicate that a delay due to readvertising was not considered of much consequence. The main object was to obtain a low bid and to secure that bid when obtained against loss which would result if the next lowest must be accepted. Furthermore, where there is an intention to stipulate for liquidated damages for delay, we generally find an attempt to fix the amount for some definite period, as for instance so much per day. Taking both the wording of the invitation for bids and the surrounding circumstances into consideration, we are unable to hold that the city had a right to forfeit plaintiff's checks as liquidated damages.

A well reasoned case, much in point on the facts here, is Willson v. Mayor & Council of Baltimore, 83 Md. 203, 34 Atl. 774, 55 Am. St. 339, where a check, deposited in response to an invitation for bids which contained no intimation that such check would be held as liquidated damages or as a forfeit, was held to be merely a deposit to indemnify against loss or a penalty. Many decisions bearing upon this subject are found in the note to Evans v. Mosely, 50 L.R.A. (N.S.) 890. The value of the case of Mutchler v. Easton, 9 Pa. C. C. 613, as an authority for appellant, is considerably lessened in that the stipulated facts therein showed an actual loss exceeding the amount of the check deposited, and in that the supreme court upon appeal directed judgment to be entered in favor of plaintiff, notwithstanding the court below ruled the money might belong to the city as liquidated damages. Mutchler v. City of Easton, 148 Pa. St. 441, 23 Atl. 1109. The case of Lindsey v. Rockwall County, 10 Tex. Civ. App. 225, 30 S. W. 380, sustains respondent's position.

We cannot concur with the view advanced by appellant that the bids and checks were submitted under section 314 of the Home Rule Charter Compilation of 1905, above quoted, or that the commissioner of public works, in the notice inviting bids, indicated that he was proceeding under said section so that the provision therein contained, to the effect that, if the successful bidder refuses to enter the contract awarded him, judgment may be entered for the full amount of the bond ac-

companying the bid, applies to this case and shows that a certified check, given in lieu of the bond, would be regarded in the same light. Said section relates to the letting of contracts for the construction of public improvements by the board of public works, to be approved by the common council. The purchase of this asphalt was made under a provision contained in section 256 of said compilation, as amended in 1912 (the amendment being of section 23, Title III of chapter VI, Charter of 1900), which authorized the common council directly to make the contract, without the aid of the board of public works, after first having received bids advertised for by the commissioner of public works. Prescribing the conditions and terms of the bond or security to accompany bids, presented under the last-named section, seems to devolve upon the common council under section 559 of said charter compilation. When the city undertakes to claim plaintiff's money, deposited with these bids, as a forfeit, without proof of injury, it must point for authority so to do to some specific charter provision applicable to the facts under which the deposit was made, or else rest upon the conditions in the notice calling for the bids. Forfeitures should not be permitted upon uncertain or doubtful inferences.

The judgment is affirmed.