[Civ. No. 3155. Second Appellate District, Division Two.—July 9, 1921.]

## THE CITY OF LOS ANGELES (a Municipal Corporation), Respondent, *v.* M. T. SHAFER et al., Appellants.

[1] STREET LAW—WORK UNDER ACT OF 1913—COMMENCEMENT OF WORK—NOTICE TO CONTRACTOR—BURDEN OF PROOF—PLEADING AND EVIDENCE.—Under Section 9 of the Street Improvement Act of 1913 (Stats. 1913, p. 954), the receipt of notice by the contractor from the superintendent of streets that there is sufficient money or bonds in the special fund devoted to the proposed improvement to pay the contract price, starts the time within which work must be commenced, and the burden is on the municipality both to allege and prove receipt by the contractor of such notice in an action against him and his surety for nonperformance of the contract.

[2] ID.—MAILING OF NOTICE TO CONTRACTOR—INSUFFICIENCY OF EVIDENCE.—Deposit of notice in the mail to the address given by the contractor in his bid, where the bid was submitted over six months before the mailing of the notice, was not sufficient notice, in the absence of evidence that the place to which the envelope containing the notice was directed was the address of the contractor at the time of the mailing.

[3] ID.—PENALTY OF BOND—CONSTRUCTION OF ACT—ACTUAL DAMAGES. In view of section 9 of the Street Improvement Act of 1913, which provides that if the contractor abandons the work or fails to proceed with it as rapidly as required by his contract, the city may hold him and his sureties responsible on the bond for the cost of any new contract that may be relet by it, for the expenses incurred in reletting the contract, and for any damages resulting from such abandonment (Stats. 1913, pp. 959, 960), the damages referred to are actual damages, and the statute contemplates the recovery of no more than the damages actually sustained, including the costs and expenses incurred in reletting the contract.

[4] DAMAGES—NATURE OF—QUESTION OF FACT.—Whether it would be impracticable or extremely difficult to fix the actual damage in a case in which the parties have attempted to agree upon the liquidated damages in advance is a question of fact.

APPEAL from a judgment of the Superior Court of Los Angeles County. Lewis R. Works, Judge. Reversed.

The facts are stated in the opinion of the court.

Bicksler, Smith & Parke and F. C. Austin for Appellants.

Charles S. Burnell, City Attorney, and Wm. P. Mealey, Assistant City Attorney, for Respondent.

SHENK, J., *pro tem.*—This is an action against the contractor and his surety on a faithful performance bond given pursuant to the Street Improvement Act of 1913 (Stats. 1913, p. 954).

In May, 1917, the city of Los Angeles, after proceedings regularly taken, invited proposals for the improvement of Oregon and Ezra Streets. The defendant M. T. Shafer submitted a bid to do the work for $4,487.84. The bid was accepted and the contract, which was awarded to him, was executed on June 16, 1917. On the same day the defendant Shafer and Maryland Casualty Company, as his surety, executed a bond in the sum of $1,125 for the faithful performance of the contract, as required by section 9 of said act. The city then proceeded to ascertain the damages to private property by reason of the proposed improvement and to levy and collect an assessment sufficient to pay the damages and the contract price. On December 22, 1917, the city, through its board of public works, caused a notice to be deposited in the United States mail, addressed to the defendant contractor at 220 West Thirty-third Street, Los Angeles. This street number was the address placed by Mr. Shafer on his bid when the same was submitted by him in May. The notice stated that there was sufficient money and bonds in the special improvement fund to pay the contract price, and concluded with the following: "You are further notified to commence within twenty days from the date of service upon you of this notice, and thereafter diligently prosecute to completion, the work of said improvement according to the terms of that certain contract therefor made and entered into between you and The City of Los Angeles, dated the 16th day of June, 1917, and now on file in the office of the city engineer of said city." Work was not commenced within twenty days after the date of the mailing of the notice nor at all. On January 21, 1918, the contract was canceled by resolution of the board of public works, and the city relet the contract to another contractor for $5,104.97,

or $617.13 more than Mr. Shafer's bid. On June 10, 1918, the plaintiff brought this action. Judgment for the full amount of the bond was rendered against the defendants, both of whom have appealed.

The principal contentions presented on behalf of the appellants are: First, that the contractor never was placed in default in accordance with the statute, and therefore no liability accrued on the bond; and, second, that the trial court enforced the obligation under the bond as one for liquidated damages, whereas it is contended the plaintiff is entitled under the statute to actual damages, and none other, and that no such actual damages were shown.

[1] As to the first contention, it is urged that under section 9 of the act and the contract made in pursuance thereof, the plaintiff must allege and prove receipt by the contractor of the said notice before he can be put in default. Section 9 provides that "the contract shall provide that the work must commence within twenty days after the contractor receives written notice from the Superintendent of Streets that there is sufficient money or bonds, or money and bonds, in the special fund devoted to the proposed improvement to pay the contract price, and be completed within such time as the Superintendent of Streets shall prescribe." In obedience to this requirement of the statute the contract contains the following provision: "It is further understood and agreed that the work herein mentioned shall be commenced by the party of the first part within twenty days after notice in writing is received by said party from the Board of Public Works of the City of Los Angeles that there is sufficient money or bonds, or money and bonds, in the special fund devoted to the improvement . . . and shall be completed within sixty days after the receipt of said notice by the said party of the first part."

The contention of the appellants is well taken. Under the statute and the contract the receipt of the notice by the contractor starts the time within which work must be commenced or he be in default and subject to a cancellation of the contract, and the burden is on the plaintiff both to allege and prove receipt by the contractor of the notice. The complaint alleges that the plaintiff "did duly perform or did cause to be duly performed all of the conditions and acts on its part which it was required to do under said con-

tract and under said statute hereinbefore referred to.'' This allegation is denied and issue is thus properly joined under section 457 of the Code of Civil Procedure. The court found ''that on the 24th day of December, 1917, the Board of Public Works of said City served the defendant M. T. Shafer with a notice that there was at that time in the special fund devoted to the improvement'' sufficient money and bonds to pay the contract price. **[2]** Assuming that this is equivalent to a finding that the contractor received the notice, it is the position of the appellants that there is no evidence to support such finding. There is no contention by the respondent that the notice was served other than by mail to the address given by Mr. Shafer in his bid, which was submitted over six months before the mailing of the notice. It is contended, however, by the respondent that the deposit of the notice in the mail on the twenty-second day of December, 1917, together with the presumption of receipt provided for in subdivision 24 of section 1963 of the Code of Civil Procedure, is sufficient to prove its receipt. The presumption relied upon is: ''That a letter duly directed and mailed was received in the regular course of mail.'' But before this presumption can arise it must be shown that the letter was duly directed. A letter is duly directed when it is addressed to the person intended at the city or town where he resides or has his place of business or at the post-office where he usually receives his mail. (22 Corpus Juris, sec. 39, and cases therein cited.) There is no evidence that the place to which the envelope containing the notice was directed was the address of the defendant Shafer at the time of the mailing. On the contrary, the only evidence as to his postoffice address at that time was that of Shafer himself, who testified that he had moved to Exeter, California, in August, 1917, and that his postoffice address at the time of the mailing in question, to wit, December, 1917, was at that place.

There is authority to the effect that the presumption of receipt arises when the letter is addressed to a former address if it be shown that the addressee gave a forwarding address to the postal authorities or that such authorities knew of the change of address. (*Marston* v. *Bigelow,* 150 Mass. 45, [5 L. R. A. 43, 22 N. E. 71].) But no such showing was here made. In the absence of such showing cer-

tainly it may not be said that the letter was duly directed. The presumption, therefore, did not arise. The defendant Shafer testified that he did not receive the notice. Respondent comments on this testimony by saying that the trial court did not believe this testimony. But we are here dealing not with the question of whether the presumption has been overcome, but with the question of whether the presumption has arisen at all under the evidence. Our conclusion is that it has not.

It is further alleged in the complaint that "on the 22nd day of December, 1917, the Board of Public Works of said City notified the said defendant M. T. Shafer, under the provisions of section 20 of said act, that there was sufficient money in the hands of the City Treasurer," etc. This allegation was made apparently on the theory that if the mailing of the notice without proof of receipt is insufficient under section 9 of the act, such mailing would be sufficient under section 20 of the act. That section provides that when sufficient money is on hand to pay the estimated damages and all expenses and costs of doing the work, "it shall be the duty of the Superintendent of Streets to notify the contractor for the work of that fact and to draw demands on such special fund for the respective amounts of damages awarded by the report, and to notify the owner of each parcel of land declared by the report to be damaged, if the name of such owner is stated in the report, that the awards of damages are payable, and that he may receive the sum awarded him on executing a release to the City of all liability for damages caused by the improvement. Such notification may be given by depositing a notice, postage prepaid, in the postoffice, addressed to such person at his last known place of residence." Respondent's contention is that the mailing of the notice to the "last known place of residence" permitted by this section applies to the notice to the contractor as well as to the notice to the property owners. There would be some force to this contention if this section stood alone, but when this provision is read in connection with section 9, we conclude that it was intended to apply only to the notice to property owners, whose present addresses are usually widely separated and difficult to follow. Reading the two sections together there is no indication in any language used in section 20 of an intention to dispense

with the requirement of receipt of notice by the contractor as specified in section 9.

[3] The second contention of appellants is that there was no evidence to support the finding that the amount of the bond in question was agreed upon as liquidated damages in the event of a breach of the contract, and that it was impossible under the evidence to fix the actual damages sustained by reason of the alleged breach. The bond is to the effect that the principal and his surety are bound unto the city of Los Angeles in the sum of $1,125. The condition is that if the principal shall faithfully perform all covenants, conditions, and agreements of the contract, then the obligation to be void, otherwise to remain in full force and effect. If it be assumed that under some circumstances and an appropriate statute a bond in this form might be held to constitute an agreement for liquidated damages, we are again confronted with the particular statute under which the agreement was made and which must be read into it and considered a part of it. Section 9 further provides that "the legislative body must let the contract to the lowest responsible bidder, who shall give bond for the faithful performance of the work in such sum as may be required by it"; that if the contractor fails to proceed with the work the legislative body may relet the contract and "pay the cost of the same, and also any expenses incident to the reletting, out of the funds due, or to become due the contractor, and also hold him and his sureties responsible on his bond for such costs and expenses, and also any damages resulting from the abandonment." Under the statute the city is not authorized to agree on any sum as liquidated damages, but only to hold the contractor and his surety for "any damages resulting" from the breach. The statute contemplates that if any damages result they are ascertainable. If the legislature intended that the obligation be one for liquidated damages or for a penalty or a forfeiture, it could have so provided. It is significant that in this same section 9 it is provided that the certified check required to be deposited with the clerk when the bid is submitted "shall be forfeited to the city" in case the bidder fails to enter into the contract awarded to him. Not so as to the faithful performance bond. As to it the section specifies that the recovery thereunder shall be for "any damages," in the sense, we

think, of "whatever damages" resulted from the abandonment.

It was stipulated that the city levied the assessment, that it collected either money or bonds in sufficient amount to pay the awards of damages, the contract price, and the incidental expenses. It was also stipulated that upon the reletting of the contract a supplemental assessment was levied to cover the difference between the Shafer contract and the subsequent contract. It therefore appears that the property owners paid the entire cost of the proceeding through the original and the supplemental assessments and that the city itself did not bear any of such cost. It is the position of the city, as expressed by its counsel at the trial, that if the full amount of the bond cannot be recovered, no recovery is sought. It is urged that although the city, as a corporation, is out nothing from a monetary standpoint, yet there is an unascertainable loss to the public of the use of the improved street because of the delay in the commencement and completion of the work. In this connection the city produced witness Gibson, who was asked if in his opinion it was possible to estimate the damages to the city of Los Angeles because of the failure of the original contractor to improve the street. The question was objected to on general grounds and on the ground that it called for the conclusion of the witness. The court sustained the objection and declared that this was not a question of fact but a question of law under the statute. Thereafter the court found "that the city of Los Angeles and its inhabitants were deprived of the use of Oregon Street as it was contemplated to be improved under and by virtue of said contract during the time that the contract was being relet and said supplemental assessment was being levied and collected; that it is impossible to fix the actual damages suffered or sustained by plaintiff by reason of the failure of said defendant M. T. Shafer to carry out the terms of said contract and to do the improvement work specified therein, and that by reason thereof the sum of $1,125 was agreed upon by the said plaintiff and the said defendants as liquidated damages for the breach of said contract."

[4] We believe the court was in error in assuming that it was a question of law as to whether it would be impracticable or extremely difficult to fix the actual damages. In

*Consolidated Lumber Co.* v. *City of Los Angeles,* 33 Cal. App. 698, [166 Pac. 385], it is said: "Whether 'it would be impracticable or extremely difficult to fix the actual damage' in a case in which the parties have attempted to agree upon the liquidated damages in advance, is a question of fact." (See, also, *Thomas* v. *Anthony,* 30 Cal. App. 217, [157 Pac. 823]; *Los Angeles Olive Growers Assn.* v. *Pacific Surety Co.,* 24 Cal. App. 95, [140 Pac. 295]; *McInerney* v. *Mack,* 34 Cal. App. 153, [166 Pac. 867]; *Pacific Factor Co.* v. *Adler,* 90 Cal. 110, [25 Am. St. Rep. 102, 27 Pac. 36]; *Long Beach City School District* v. *Dodge,* 135 Cal. 401, [67 Pac. 499].) In *Consolidated Lumber Co.* v. *City of Los Angeles, supra,* the general rule is also stated to the effect that the declaration of the parties in their contract that the actual damages would be difficult of ascertainment and that the sum agreed upon should constitute liquidated damages tends strongly to establish the fact required by the statute to exist. In the present case the plaintiff alleged that "it would be and was and is impracticable or extremely difficult to fix the actual damage suffered by the plaintiff by reason of the breach of said contract," and "by reason of such impracticability or extreme difficulty of fixing such damages the sum of $1,125 was agreed upon by the said plaintiff and the above-named defendants as liquidated damages for the breach of said .contract." These allegations were denied, but were found to be true notwithstanding the fact that neither the contract nor the bond so declared and no evidence was admitted to support the allegations. There is, therefore, no support in the evidence for the findings complained of. Furthermore, there is no evidence in the record to show that the contractor to whom the contract was relet completed the work at a date later than the defendant Shafer could have done under the contract had he duly proceeded thereunder.

There is nothing in the statute or the contract or the bond to indicate that the parties had in mind an agreement for liquidated damages. In *In re The Columbia,* 197 Fed. 661, it was said, quoting from *Keeble* v. *Keeble,* 85 Ala. 552, [5 South. 149]: "The courts are disposed to lean against any interpretation of a contract which will make it liquidated damages, and in all cases of doubtful intention will pronounce the stipulated sum a penalty." Respondent

contends that this rule should not be invoked as against a public corporation, and cites authority to the effect that a city should be favored in attempting to enforce a contract for liquidated damages in connection with public work. (*Brooks* v. *City of Wichita,* 114 Fed. 297, [52 C. C. A. 209].) But in that case the contract provided for the payment of a sum as liquidated damages and not as a penalty. The intention of the parties was manifest. No good reason has been advanced why a public corporation of this state should be relieved under present law from the operation of sections 1670 and 1671 of the Civil Code.

The authorities cited by the respondent are not inconsistent with the authorities supporting the appellants' contention or the conclusions herein expressed. The cases of *Potter* v. *Ahrens,* 110 Cal. 674, [43 Pac. 388], and *Pogue* v. *Kaweah Power & Water Co.,* 138 Cal. 664, [72 Pac. 144], and earlier cases relied upon, were actions in which the parties agreed upon a sum which should constitute liquidated damages or in which the court found from the peculiar circumstances surrounding the contract and the intention of the parties that the obligation was one for liquidated damages.

The determination of the two principal contentions of the appellants disposes of or renders unnecessary a discussion of other points suggested.

The judgment is reversed.

FINLAYSON, P. J., and CRAIG, J., Concurring.—We concur in the judgment of reversal on the ground that there is no evidence to support the finding that the sum named in the bond was agreed upon as liquidated damages. That instrument is a statutory undertaking, and should, therefore, be construed in the light of the statute, which declares that if the contractor abandons the work or fails to proceed with it as rapidly as required by his contract, the city may hold him and his sureties responsible on the bond for the cost of any new contract that may be relet by it, for the expenses incurred in reletting the contract, and for "any damages resulting from such abandonment." (Stats. 1913, pp. 959, 960.) The damages thus referred to are actual damages, and the statute, therefore, contemplates the recovery of no more than the damages actually sustained, including the

costs and expenses incurred in reletting the contract. It follows that the amount of the city's recovery must be measured by its actual damage; and since respondent failed to prove the amount of its actual damages, if any were sustained, there is no basis for the judgment.