[L. A. No. 20761. In Bank. Sept. 21, 1950.]

MARTIN PETROVICH, Plaintiff and Respondent, v. CITY OF ARCADIA, Appellant; GREAT AMERICAN INDEMNITY COMPANY, Cross-Defendant and Respondent.

T. Guy Cornyn (City Attorney), Burke, Marshall & Burke and Daniel G. Marshall for Appellant.

Stephen Monteleone for Respondents.

SHENK, J.—The plaintiff brought this action against the city of Arcadia for the rescission and cancellation of his bid to construct sanitary improvements in that city, and for the exoneration of the surety on the bid bond. The city cross-complained joining the surety as a defendant, and prayed for a forfeiture of the bond and for judgment in the full amount thereof. Judgment went against each of the parties on their respective pleadings. The city has appealed from the judgment adverse to it.

In the early part of 1946 the city was duly authorized by popular vote to incur a bonded indebtedness of $350,000 to construct sanitary improvements. The bonds were sold and the proceeds provided a fund in the stated amount for the purpose intended.

On August 6, 1946, the city invited bids for the construction of sewer lines and works in accordance with specifications on file, each bid to be accompanied by a cashier's check or a bond in at least 10 per cent of the amount of the bid. On August 20, 1946, the plaintiff filed a bid of $347,129.40 and a surety bond in the sum of $37,500. On that date the bids were opened, and the plaintiff's bid was found to be the lowest. Five other bids ranged in amounts from $416,188.75 to $556,480.80. On

August 22, and before acceptance, the plaintiff delivered to the city council a written request for permission to withdraw his bid because the cost of certain "wyes" in the pipe lines amounting to $55,448.06 had been inadvertently omitted, and the inclusion of that item would have brought the amount of the bid to $402,577.46. Permission to withdraw or amend the bid was refused. The plaintiff's bid was accepted and he was requested to sign a contract to perform the work. This he failed to do and commenced the action for the cancellation of the bid and the bid bond. The judgment on the issues thus raised was based on the trial court's finding that there was no inadvertent error in the computation of the plaintiff's bid. Since the plaintiff has not appealed, any question as to the correctness of that finding is now foreclosed.

The only questions for determination concern the correctness of the court's findings on the issues tendered by the cross-complaint.

The invitation for bids required that each bid must be accompanied by either a cashier's check or a bond in at least 10 per cent of the total amount of the bid as a guarantee that on acceptance the bidder would enter into the contract and furnish a faithful performance bond.

The plaintiff's bid was on a form furnished by the city and contained the following language with ink lines drawn through the portions indicated: "A* ~~cashiers check properly made payable to the City of Arcadia~~* a Bid Bond in favor of the City of Arcadia for Thirty Seven Thousand Five Hundred dollars ($37,500.00), which amount is not less than ten percent (10%) of the total amount of this proposal, is attached hereto and is given as a guarantee that the undersigned will execute the Agreement and furnish the required bonds if awarded the contract and in case of failure to do so within the time provided *~~said check shall be forfeited to the City~~* Surety's liability to the City will be established . . .* (Strike out inapplicable phrase)."

The bid bond in the sum of $37,500 was in the usual form with the condition stated that upon the acceptance of an award made to the plaintiff and his entering into a contract and giving the required performance bonds, the bid bond obligation should be null and void, otherwise to remain in full force and effect.

After the plaintiff refused to sign the contract, the city adopted a resolution to the effect that the plaintiff's bid bond was forfeited. The cross-complaint was based on the

assumption that the language of the invitation for bids and of the bid provided for forfeiture of the bid bond in the event the plaintiff refused to execute the contract upon the acceptance of his bid. At the close of the trial the city asked and was granted leave to amend the cross-complaint by adding an allegation that from the nature of the case it was impracticable and extremely difficult to fix the amount of damage or loss to the city by reason of the plaintiff's failure to perform. No further evidence was introduced. There was no testimony offered indicating that the nature of the case made it difficult to fix the amount of damage; nor was there any evidence of actual damage to the city. The city did not readvertise for bids and the advertised project was abandoned. Subsequently under other plans and specifications another contract was let.

The city relied on the language of the instruments in evidence and the plaintiff's noncompliance to establish a case either of forfeiture of the bond, or for liquidated damages under the exception to the general invalidity of agreements therefor (Civ. Code, §§ 1670, 1671). The trial court determined that the instruments relied upon did not provide for a forfeiture of the bond; that the language applicable to a bid bond was that of guarantee only; and that there was no intention or agreement that the penal sum should be treated as liquidated damages. The court found that it was not impracticable or extremely difficult to fix the amount of damage or loss to the city by the plaintiff's failure to enter into the contract, and that the city suffered no actual damage. The city questions the foregoing determination and findings, and the judgment based thereon.

At the time here involved there was no statute applicable to cities of the sixth class, of which the city of Arcadia is one, requiring the deposit of bid security and forfeiture thereof under such a contract. The Legislature enacted the requirement in 1949. Prior to that year provisions relating to public work contracts in fifth and sixth class cities were included in sections 777 and 874 of the Municipal Corporation Bill of 1883. (Stats. 1883, p. 93 as amended; Deering's Act 5233.) In 1949 these provisions became sections 37900 to 37907 inclusive of the Government Code. (Stats. 1949, pp. 100, 165.) At no time did they contain specific provision for bid security deposit and forfeiture. At the same session of the Legislature sections 37930 to 37935 inclusive, applicable to cities of the sixth class only, were added to the Government Code. (Stats.

1949, p. 1186, § 3 of act.) It was there provided that security, in the form of cash, cashier's check, certified check, or surety bond, in at least 10 per cent of the amount should accompany the bid, and that if the successful bidder should fail to execute the contract the amount of the bidder's security should be forfeited to the city (with an exception not necessary to be noticed). Thus in cases such as this the Legislature has now made mandatory a deposit of security and forfeiture when the successful bidder has inexcusably refused to execute the contract. In adopting those provisions it was declared in section 4 that the legislative intention was not to change the existing law, but rather by such adoption to declare that under prior section 874 "cities of the sixth class always have had power to require a bid bond, cashier's check or other security, and the power thereunder to declare the forfeiture thereof upon failure, neglect or refusal to enter into a contract awarded thereunder."

The foregoing may be said to be a legislative recognition in 1949 of the power of cities of the sixth class theretofore to provide by other means what the Legislature has now enacted, namely to make adequate provision for the forfeiture of required bid security as a penalty or liquidated damages. But that recognition cannot also be deemed an exercise of the power for the city. In exercising the power the greater penalty must be declared in conjunction with the requirement for bid security deposit. Therefore assuming that the city might make the proper provision by the instruments involved, the question is whether it has done so. Where similar provisions, statutory or otherwise, have been brought into question the result has turned on whether the language declared the full sum forfeited either as a penalty or as liquidated damages. Here language to that effect in relation to the bond security is lacking.

*Palo and Dodini* v. *City of Oakland*, 79 Cal.App.2d 739 [180 P.2d 764], involved a provision of the Oakland City Charter requiring the deposit of a certified check with a bid and the forfeiture of the check in the event the successful bidder failed to execute the contract. It was held that, restricting the charter language to its most technical limits, as required by the established rule, the explicit and mandatory terms called for a forfeiture and prohibited any relief therefrom.

In *Mill Valley* v. *Massachusetts Bonding & Insurance Co.*, 68 Cal.App. 372 [229 P. 891], the bond forfeiture declaration of section 10 of the Improvement Act of 1911 (Stats. 1911,

p. 730) was brought into question. That section required the deposit of either a certified check or a bond with the bid. The language of forfeiture read: ''But if any bidder fails, neglects or refuses to enter into the contract to perform'' the work, ''then the certified check accompanying his bid and the amount therein mentioned shall be declared to be forfeited to said city, and shall be collected by it and paid into the general fund, and any bond forfeited may be prosecuted and the amount due thereon collected and paid into said fund.'' It was held that the language did not fall short of prescribing a forfeiture in the case of a bond, but that the terms of the statute created the forfeiture. The court noted the omission of the express declaration as to the bond, but concluded that the result was the same because of the use of the word ''forfeited'' in direct connection with the word ''bond.'' No similar language in connection with the bond requirement appears in the present case.

*City of Los Angeles* v. *Shafer,* 53 Cal.App. 458 [200 P. 384], involved a faithful performance bond under section 9 of the Street Improvement Act of 1913 (Stats. 1913, p. 954). In the event of the abandonment of the work, that section authorized the city to relet the contract and hold the contractor and his sureties responsible on his bond for the costs and expenses of reletting, and any damage resulting from the abandonment. (*Cf.,* Gov. Code, § 37935; Stats. 1949, p. 1186.) There was no express alternative declaration of forfeiture. The court contrasted the provision applicable to the bond liability with language in the same section requiring certified check security with the bid and forfeiture of the whole sum if the bidder failed to enter into the contract. As to the bond it was said: ''If the legislature intended that the obligation be one for liquidated damages or for penalty or a forfeiture, it could have so provided.''

Numerous other cases have been cited in support of the propriety of the city's resolution that there was a forfeiture in the present case. Those cases supported the power of the city to enforce full recovery where the statute or contract declared a forfeiture, usually as liquidated damages. (*Turner* v. *City of Fremont,* 170 F. 259 [95 C.C.A. 455]—contract, liquidated damages; *Davin* v. *City of Syracuse,* 69 Misc. 285 [126 N.Y.S. 1002]—contract, liquidated damages; *Village of Morgan Park* v. *Gahan,* 136 Ill. 515 [26 N.E. 1085]—contract, forfeiture, legality assumed; *Wheaton Building & Lumber*

*Co.* v. *City of Boston*, 204 Mass. 218 [90 N.E. 598]—statute, liquidated damages; *Daddario* v. *Town of Milford*, 296 Mass. 92 [5 N.E.2d 23, 107 A.L.R. 1447]—PWA rules and contract, liquidated damages; *Mayor etc. of Baltimore* v. *Robinson Const. Co.*, 123 Md. 660 [91 A. 682, Ann.Cas. 1916C 425, L.R.A. 1915A 225]—charter, liquidated damages; *Elliott Bldg. Co.* v. *City of Greensboro*, 190 N.C. 501 [130 S.E. 200]—contract, liquidated damages.) *City of Weston* v. *Bank of Greene County* (Mo.App.), 192 S.W. 126, involved a suit by the city on a deposit check payment of which had been refused. The terms and source of the provisions, whether statutory or contractual, under which the check was deposited were not disclosed in the opinion, but the action was upheld under the assumed power of the city "to require a deposit with bids, to be forfeited on the conditions stated in the published offer," as indicated in *Village of Morgan Park* v. *Gahan, supra.*

The foregoing cases disclose that forfeiture to the full amount of the deposit as a penalty or as liquidated damages was accomplished by express language. Thus there was notification by the terms of the statute or the contract of the extent of the contractor's and surety's liability where liability in excess of actual loss and damage was intended.

In the present case the plaintiff's bid on the form furnished by the city, with the inapplicable phrases stricken as instructed therein, reads: "A bid bond . . . is attached hereto and is given as a guarantee that the undersigned will execute the agreement and furnish the required bonds if awarded the contract and in case of failure to do so within the time provided . . . surety's liability to the City will be established." This language contains no words of forfeiture or of an agreement that the full sum of the bond will be considered as liquidated damages in the event the contract is not entered into. Nor does the city's invitation for bids contain such language. The declaration is that of guarantee.

Forfeitures in the nature of a penalty are not favored; and language must be so construed as to avoid a forfeiture if that is possible. (*O'Morrow* v. *Board*, 27 Cal.2d 794, 800 [167 P.2d 483], and cases cited; *Booth* v. *County of Los Angeles*, 124 Cal.App. 259, 261 [12 P.2d 72]; Civ. Code, § 1442.) In the case of agreements for liquidated damages sections 1670-1671 serve to prevent any penalizing effect, and therefore there may be no need for such a rule of construction. In the present case we are of the opinion that the agreement does not provide for either a penalty or liquidated damages

since the language in relation to the bid bond contained in the executed bid form adopts no more than the words of guarantee in the bid invitation. Words indicating that the full sum of the bond would be forfeited or treated as liquidated damages could readily have been used. To construe words actually used otherwise than in accordance with their plain meaning would result in unauthorized changes in or additions to the language of the instruments and would base the conclusion upon uncertain or doubtful inferences contrary to the language expressly employed. The wording of the bid invitation and the executed bid was of the city's own choosing and should not be held to extend the bidder's and the surety's hazards beyond its fair meaning. (*Barber Asphalt Paving Co.* v. *City of St. Paul,* 136 Minn. 396 [162 N.W. 470, L.R.A. 1917E 370].)

■ Municipalities are not exempt from the foregoing rules in dealings with private persons. (*Sacramento County* v. *Southern Pacific Co.,* 127 Cal. 217 [59 P. 568, 825] ; *Hoyt* v. *Board of Civil Service Commissioners,* 21 Cal.2d 399, 402 [132 P.2d 804] ; *Corporation of America* v. *Durham etc. Co.,* 50 Cal.App.2d 337, 340 [123 P.2d 81], and cases cited.)

■ There is here no justification for applying a different rule because a municipality is involved. In *Groves* v. *John Wunder Co.,* 205 Minn. 163 [286 N.W. 235, 123 A.L.R. 502, 506], it was pointed out that if so-called public contracts were in the suggested special category for measuring damages, a municipal corporation would be dealt with more favorably than the ordinary litigant. In the absence of statutory or contract language otherwise providing, the guarantee measured the city's compensatory right to the extent of the actual damage only and the liability of the surety on the bid bond would thereby be deemed to be "established" for the actual damage resulting from the plaintiff's breach, but limited by the sum stated in the bond. (11 C.J.S. 508, par. 130; *United States* v. *Alcorn,* 145 F. 995, 998; *Weinreich E. Co.* v. *A. J. Johnston Co.,* 28 Cal.App. 144, 148 [151 P. 667], and authorities cited.)

If it be assumed by any process of reasoning that the language of the instruments might be construed as an agreement to treat the total sum of the bond as liquidated damages, such a construction would bring into operation sections 1670 and 1671 of the Civil Code. Under those sections it must appear from the nature of the case that it would be impracticable or

extremely difficult to fix the actual damages. These provisions apply to the city as well as to any other contracting party. (*City of Los Angeles* v. *Shafer, supra,* 53 Cal.App. at p. 466.) Whether the case comes within their terms presents a question of fact which must be alleged and proved. (*Dyer Bros. etc. I. Wks.* v. *Central I. Wks.,* 182 Cal. 588, 593 [189 P. 445]; *Rice* v. *Schmid,* 18 Cal.2d 382, 385 [115 P.2d 498, 138 A.L.R. 589].) No specific showing on that issue was attempted by the city and the findings were based on inferences contrary to its position. Different inferences may not here be indulged. It is not indicated that loss or damage was suffered by the city in any proceeding to relet the contract. In fact, no steps to that end were taken, and there was no showing that any special loss to the city resulted in abandoning the project. The absence of specific evidence that the nature of the case made it difficult to ascertain loss or damage, and the reasonable inferences from the facts that such difficulty did not exist, support the finding of the failure of any showing on that issue. Also as no actual damage was shown the trial court was justified in concluding that there was no basis upon which recovery could be awarded on the city's cross-complaint. The question of the general power of the city in the absence of statute to provide by contract for forfeiture or liquidated damages becomes a matter of academic interest only and unnecessary to be decided in this case. This is especially true as the Legislature has now spoken on the subject.

The judgment is affirmed.

Gibson, C. J., Edmonds, J., Traynor, J., and Schauer, J., concurred.

CARTER, J.—I dissent.

The interpretation placed upon the transaction by the majority opinion is unsupportable. It is conceded that the city could lawfully have provided for a forfeiture or liability of the full amount of the bid bond, and there is no doubt about it—(*Palo and Dodini* v. *City of Oakland,* 79 Cal.App.2d 739 [180 P.2d 764]). The issue is wholly one of interpretation. Desiring to have constructed a sewer system, the city called for bids. In its invitation for bids it was stated that each bid must be accompanied by "*either* a cashier's check or bid bond" for 10 per cent of the bid "made payable" to the city "as guarantee" that the bidder "will enter into a contract if his bid is accepted." In addition, a form of bid was furnished

and used by the bidder wherein it was stated: "A *cashiers check properly made payable to the City of Arcadia* a Bid Bond in favor of the City of Arcadia for Thirty-seven Thousand Five Hundred Dollars ($37,500.00), which amount is not less than . . . 10% of the . . . amount of this proposal, is attached hereto and given as a guarantee that the undersigned will execute the Agreement . . . if awarded the contract and in case of failure to do so within the time provided* said check shall be forfeited to the City.* Surety's liability to the City will be established." A footnote in explanation of the asterisk stated "Strike out inapplicable phrase." Plaintiff drew a line through the phrases between the first two asterisks and those between the last two. It is also recited therein that defendant-city "will in no way be responsible for any errors or omissions made in the preparation of this bid." The court found and it is not questioned that plaintiff-bidder committed a "wilful breach of duty in refusing to enter into" the construction contract.

The only reasonable interpretation of the invitation for bids and bid form is that the liability under the bond would be for the full amount. The words used cannot be differently construed. It is provided that if the bidder fails to execute the contract, his *liability* to the city will be *established.* "Established" means: "Made stable or firm; fixed or secured in some way." (Webster's New Int. Dict. [2nd ed.] p. 874.) "Establish" means: "To fix immovably or firmly." (Id. p. 874.) "To establish is to make stable or firm; to fix in permanence and regularity; to settle or secure on a firm basis, to settle firmly or to fix unalterably." (*Wells Lamont Corp.* v. *Bowles,* 149 F.2d 364, 366.) The "liability" would not be settled beyond dispute if there still remained to determine the amount of the liability, as is held by the majority. The liability was for the amount of the bid bond, otherwise the complete or exact liability would not be fixed. "The process of fixing implies primarily, a stabilization or definite determination." (*Pulcifer* v. *County of Alameda,* 29 Cal.2d 258, 263 [175 P.2d 1].) (See, also, *San Francisco P. W. Factory* v. *Brickwedel,* 60 Cal. 166, 177.) The term "to establish" is the same as the phrase "to fix." "To fix" is "to make firm, stable, or fast; to fasten; to set or place definitely; to establish; station; settle; to assign precisely, to give a permanent form to; to make definite and settled." (Webster's Int. Dict. 2d ed.] p. 958.) " 'Fixed' [liability] means certain and definite as to *both obligation and amount* . . ." [Emphasis

added.] (*National Commercial Title & Mortgage Guaranty Co.* v. *Newark,* 18 N.J.Misc. 186 [11 A.2d 759, 763].) (See, also, *First Savings Bank & Trust Co.* v. *Stuppi,* 2 F.2d 822, 825; *Oklahoma Cotton Growers' Assn.* v. *Groff,* 135 Okla. 285 [275 P. 1032, 1036]; *Commercial Casualty Ins. Co.* v. *State Board,* 119 N.J.L. 94 [194 A. 390]; *San Francisco Pioneer Woolen Factory* v. *Brickwedel,* 60 Cal. 166.) The majority opinion completely ignores the plain meaning of the words used in the documents forming the basis of this transaction.

There is, however, another completely compelling factor. It is conceded that if a cashier's check had been furnished, it would have been forfeited. There is utterly no basis for assuming that the parties intended a different result to flow if a bond instead of a check was given. The invitation for bids said that *either* a check or bond must accompany the bid, indicating that one was considered exactly equivalent to the other. True, the word "forfeiture" was not used in connection with the bond, but equally forceful and more appropriate words were used. More appropriate, for it would not be technically accurate to use the word "forfeiture" in referring to the bid bond, as distinguished from a cashier's check, for a forfeiture usually refers to the loss of a fixed tangible asset or property right such as a cashier's check would be, rather than a mere promise which is the basis of the liability created by a bid bond. It would be odd to refer to the forfeiture of the promise or the bond, inasmuch as, on the contrary, liability is to be based thereon. Thus the more appropriate words, that liability should be "established," were used. But certainly they have the same meaning and effect as words providing for a forfeiture of a cashier's check would have. That the cashier's check or bid bond were to stand for the same nature and measure of liability is further evidenced by the invitation for bids which stated that such a *check or bond* must accompany the bid as a guarantee that the contract would be executed, the *same* "guarantee" for either kind of security. It is fallacious to speak of the bidder choosing the bid bond over the cashier's check to escape a "forfeiture" or that kind of liability. Plainly the bid bond is used because it requires much less liquid capital to obtain it. It is not reasonable to suppose a different rule of liability would be imposed depending upon the security supplied. Common sense would seem to dictate that the city did not intend to give to the bidder the alternative to determine for himself whether he would suffer a forfeiture or not merely by choosing the form of

security—check or bond. The rule of construction against forfeiture does not require a court to blind itself to all reason and common sense. The requirement of security for the execution of a contract by a bidder on government contracts is common, and it is generally held that the security is forfeited on failure to execute the contract. (See, *Palo and Dodini* v. *City of Oakland*, 79 Cal.App.2d 739 [180 P.2d 764]; McQuillan Mun. Corps. [2nd ed.] § 1323.) To say that a different result would follow as to liability when a cashier's check or money is deposited, rather than a bond, is wholly artificial. Such a construction will thwart the manifest purpose of the security requirement contained in the bid. It is obvious that the construction placed upon the documents here involved will not only give the bidder the right of choice of security (cashier's check or bid bond), but will also permit him to determine in advance whether he may run the risk of having his security forfeited, or merely subject the surety on his bid bond to an action for the actual damages suffered by the public corporation for his failure to execute the contract in case his bid is accepted. Of persuasive importance in construing the instruments is the public policy underlying the requirement that security be furnished by bidders.

There is a clear analogy between this case and *Mill Valley* v. *Massachusetts Bonding & Ins. Co.*, 68 Cal.App. 372 [229 P. 891]. There the proceeding was conducted pursuant to the Improvement Act of 1911 (Stats. 1911, p. 730). That act provides: "All proposals or bids shall be accompanied by a check payable to the city, certified by a responsible bank, for an amount which shall not be less than ten per cent of the aggregate of the proposal, or by a bond for the said amount and so payable." The language relating to the forfeiture is as follows: "But if any bidder fails, neglects or refuses to enter into the contract to perform said work or improvement, as hereinbefore provided, then the certified check accompanying his bid and the amount therein mentioned shall be declared to be forfeited to said city, and shall be collected by it and paid into the general fund, and any bond forfeited may be prosecuted and the amount due thereon collected and paid into said fund."

It will be noted that the last quoted provision does not specifically provide that in the event a bid bond is given in lieu of a certified check, the bond may be forfeited if the bidder fails or refuses to enter into the contract to perform the work, while it does expressly provide that if the bidder

furnishes a certified check and refuses to enter into the contract, the certified check accompanying the bid shall be declared forfeited to the city. With reference to the forfeiture of the bond, all that is said is: "[A]ny bond forfeited may be prosecuted and the amount due thereon collected and paid into said fund." This is far from a declaration that if the bidder furnishes a bid bond instead of a certified check, and refuses to enter into the contract, *the bond shall be forfeited.* Nevertheless, the District Court of Appeal, in construing this provision in *Mill Valley* v. *Massachusetts Bonding & Ins. Co., supra,* squarely held that the last quoted language was susceptible of no other construction than that the bond should be forfeited in like manner as the certified check. In this connection, the court states at page 377: "This language does not, as contended, fall short of prescribing a forfeiture; nor does it, as claimed, amount to a mere declaration of duty authorizing the trustees to declare a forfeiture, in which event the city might be limited to a recovery of actual loss sustained. The statute itself creates the forfeiture if language means anything, for the terms employed are plain and unambiguous. When the bid is accompanied by a check the provision recites that it shall be 'declared to be forfeited,' and immediately following in referring to a bond it recites that 'any bond forfeited may be prosecuted and the *amount due thereon collected.*' [Emphasis that of the author.] While the act does not provide an express declaration in the case of a bond as it does in referring to the check, the language of the section clearly contemplates that a statutory forfeiture occurs upon failure to enter into the contract in either event. When a bond is declared forfeited and payment of the amount is refused, of necessity a suit must follow to enable the trustees to avail themselves of the benefits of the forfeiture, namely, the amount due thereon. But that a forfeiture is prescribed and imposed expressly under the act itself upon failure to enter into the contract there can be no question. The same reason and intent apply in both cases."

As I read the last quoted excerpt, it unequivocally declares that the same rule must be applied to a bid bond as to a certified check and that the only difference between the two is that "When a bond is declared forfeited and payment of the amount is refused, *of necessity a suit must follow* to enable the trustees to avail themselves of the benefits of the forfeiture, namely, the amount due thereon." [Emphasis added.] The court then declares, with respect to whether the same rule

should apply to a bid bond as to certified check, that *"The same reason and intent apply in both cases."*

Applying the reasoning in the Mill Valley case to the case at bar, no other conclusion can be reached than that if the certified check may be forfeited for failure to enter into the contract, the bid bond may likewise be forfeited and the city entitled to recover the full amount of the bond without proving that it has suffered any amount of damages whatsoever by the failure of the bidder to enter into the contract.

In addition to the foregoing, however, the statutes now require that the bond as well as the check shall be forfeited. The act under which the bonds were voted to construct the sewer here involved provides that the contract for the work shall be let "as other contracts are let" by the city. (Stats. 1901, p. 27, § 9; Deering's Gen. Laws (1943), Act No. 5178.) In 1949, provisions were added to the Government Code dealing with municipal corporations. Said code now provides that contracts of a city of the sixth class shall be let to the lowest bidder and that: "All bids shall be presented under sealed cover and accompanied by one of the following forms of bidder's security. (a) Cash. (b) Cashier's check made payable to the city. (c) A certified check made payable to the city. (d) A bidder's bond executed by an admitted surety insurer, made payable to the city." (Gov. Code, § 37931.) Then it is provided: "The security shall be in an amount equal to at least 10 per cent of the amount bid. A bid shall not be considered unless one of the forms of bidder's security is enclosed with it." (Gov. Code, § 37932.) "If a successful bidder fails to execute the contract, the amount of the *bidder's security shall be forfeited to the city* except as hereinafter provided." (Gov. Code, § 37933.) [Emphasis added.] When these sections were added to the code, the Legislature stated in the same act that: "It is not the intention of the Legislature in adopting this act *to change the existing law, but rather it is the intention of the Legislature to declare by such adoption that under Chapter 6, Part 2, Division 3, Title 4 of the Government Code cities of the sixth class always have had power under said chapter to require a bid bond, cashier's check or other security, and the power thereunder to declare the forfeiture thereof upon failure, neglect or refusal to enter into a contract awarded thereunder."* [Emphasis added.] (Stats. 1949, ch. 690, § 4.) While the specific provision for forfeiture above quoted was not made before 1949, yet the Legislature assumed provision

therefor could be made by a city as was done here. Manifestly, in restating the law, it clearly calls for forfeiture whether check or bond is used. For this court to arrive at a different conclusion is to fly in the face of the legislative declaration and the plain common sense construction of the language here used.

Furthermore, it has been held consistently that a forfeiture occurs when security is given with a bid. In *Turner* v. *City of Fremont*, 170 F. 259 [95 C.C.A. 455], it was held valid as liquidated damages. To the same effect are *Davin* v. *City of Syracuse*, 69 Misc. 285 [126 N.Y.S. 1002]; *Wheaton Building & Lumber Co.*, v. *City of Boston*, 204 Mass. 218 [90 N.E. 598]; and *Daddario* v. *Town of Milford*, 296 Mass. 92 [5 N.E.2d 23, 107 A.L.R. 1447]. *Village of Morgan Park* v. *Gahan*, 136 Ill. 515 [26 N.E. 1085], holds there is a forfeiture. To the same effect are *Elliott Bldg. Co.* v. *City of Greensboro*, 190 N.C. 501 [130 S.E. 200]; *Mayor etc. of Baltimore* v. *Robinson Const. Co.*, 123 Md. 660 [91 A. 682, Ann.Cas. 1916C 425, L.R.A. 1915A 225]; *City of Weston* v. *Bank of Green County* (Mo.App.), 192 S.W. 126, and there is a strong policy favoring that result, as stated in *Palo and Dodini* v. *City of Oakland*, 79 Cal.App.2d 739, 750 [180 P.2d 764]: "Provisions requiring a deposit accompanying a bid for city contracts, or for forfeiture thereof, *are necessary as a matter of public policy to protect the public interests.* If, as here, a bidder were allowed without loss to himself to withdraw his bid after the bids have been publicly opened, fraudulent practices would develop. The body awarding contracts could agree to release a favored contractor if it turned out that his proposal was low as compared to other bids. Moreover, any bidder who found that in comparison with the other bidders, his bid was quite low, could withdraw his bid, and the city would thereby lose the value of competitive bidding and be forced to pay the prices of higher bidders with no compensation to itself for the loss sustained." (Emphasis ours.) To further that policy requires at least a reasonable construction of the instruments and forbids the unnatural and strained interpretation given by the majority. The majority holding will make it possible for the *well financed contractor to monopolize the field* and eliminate the small contractor. Naturally cities will, after this opinion becomes the law, *always require a cashier's check* for it can be forfeited. As a result, unless a contractor has the *actual cash* on hand, he cannot put up the check. In large contracts that is a very important factor.

Furthermore, it is obvious that the inevitable result of the rule announced by the majority will be that the city will have to bring suit on every bid bond in order to recover any damage suffered by it as the result of the failure of the bidder to execute a contract awarded to him. While it is impossible to visualize all of the difficulty a city might have to prove the amount of damages suffered, it is obvious that it will place an undue burden upon the city to protect its interests in such a case. Of course, the careful city attorney, after reading an opinion of the Supreme Court holding that no forfeiture may be required in such a case, will advise the city council to require a cashier's check with every bid, and, as stated above, this will mean that the contractor without a large cash reserve will not be able to bid on large jobs because he will be unable to deposit a cashier's check with his bid.

It seems to me that if the majority is right in holding that a forfeiture cannot be had in this case, it should go the whole way and hold that the same rule would apply to a certified check because of the provisions of sections 1670 and 1671 of the Civil Code, on which the majority also relies as a basis for its decision. In this connection, it should be noted that the case of *Mill Valley* v. *Massachusetts Bonding & Ins. Co., supra*, holds squarely that sections 1670 and 1671 of the Civil Code have no application to a case of this character. At page 376 the court said (68 Cal.App. 376) : ''The still further claim is made that a statutory forfeiture is inapplicable to the case for the reason that appellant surety company by the express terms of its bond excluded any liability for a statutory forfeiture or penalty. It is accordingly claimed that sections 1670 and 1671 of the Civil Code and the equity rules against forfeitures control the case, and that therefore plaintiff should have pleaded and proved its damage.'' And again on page 378 :''A court of equity has no power to disregard or set aside the express terms of statutory legislation, however much it may interfere with the operation of common-law rules. Hence any pleading or proof of actual damage has no place in a case where equity does not apply. This being so, the sections invoked by appellant can avail it nothing. This brings us to the final contention of appellant upon the subject, namely, that a statutory forfeiture is inapplicable to the case for the reason that appellant surety company by the express terms of its bond excluded any liability for such forfeiture or penalty.'' Further, on page 379: ''The insertion in the bonds of the phrases 'liquidated damages' does not in anywise change their

character or limit the liability thereon so as to require pleading and proof incident to such damages. The amount thereof was the same as required by the statute. There was therefore no attempt by the parties to limit liability under the bonds in this particular. Under these circumstances, whether the amount be considered as a penalty or as liquidated damages is of no moment, for in either event the instruments are absolute undertakings to pay the amount named therein, and are not conditioned against loss or damage requiring pleading and proof.'' While it is true, as heretofore stated, the proceedings involved in the Mill Valley case were pursuant to the provisions of the ''Improvement Act of 1911'' (Stats. 1911, p. 730) and ''Improvement Bond Act of 1915'' (Stats. 1915, p. 1441), the court there pointed out that the same reasoning applied whether the security declared to be forfeited was a certified check or a bid bond, and, as heretofore further pointed out, the 1949 session of the Legislature declared that ''cities of the sixth class always have had power'' under the statutes of this state ''to require a bid bond, cashier's check or other security, and the power thereunder to declare the forfeiture thereof upon failure, neglect or refusal to enter into a contract awarded thereunder.'' (Stats. 1949, ch. 690, § 4.)

To my mind this is a case in which this court should do a clean cut job of simplifying the law so that both public corporations and contractors will know just what their respective rights are, and not try to arrive at a result in this case which will relieve a contractor and a bonding company of liability by making bad law which not only reflects unfavorably upon this court, but will continue to plague those who may be subjected to it as long as the majority of this court will permit it to stand.

I would, therefore, reverse the judgment.

SPENCE, J.—I dissent.

In my opinion the judgment should be reversed and I am in accord in the main with the reasoning found in the dissenting opinion of Mr. Justice Carter.

Appellant's petition for a rehearing was denied October 19, 1950. Carter, J., and Spence, J., voted for a rehearing.